NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

ASHLEE W., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, E.S., *Appellees*.

No. 1 CA-JV 15-0093
FILED 9-22-2015

———————————————

Appeal from the Superior Court in Yavapai County
No. P1300JD201400017
The Honorable Anna C. Young, Judge

**AFFIRMED**

———————————————

COUNSEL

Law Office of Florence M. Bruemmer, P.C., Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Eric K. Knobloch
*Counsel for Appellees*

———————————————

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding
Judge Diane M. Johnsen and Judge Kent E. Cattani joined.

———————————————

**G E M M I L L**, Judge:

¶1        Ashlee W. ("Mother") appeals from the juvenile court's ruling that terminated her parental rights to her child, E.S., born in 2014.  Because Mother is a member of the Choctaw Nation, E.S. is an Indian child and this case is subject to the Indian Child Welfare Act (ICWA).  For the following reasons, we affirm.

## BACKGROUND

¶2        On April 2, 2014, E.S. was taken into custody by the Department of Child Safety ("DCS")[1] after a hotline report that Mother had tested positive for methamphetamine in January 2014 while pregnant with E.S. and had used methamphetamine shortly after E.S. was born.  When contacted by social workers, Mother admitted using methamphetamine, and one social worker reported that Mother could not see how using methamphetamine while pregnant or in the child's presence was neglectful.   DCS filed a dependency petition and a preliminary protective hearing was held in April 2014.  Mother was present at the hearing and received a Form 1 Notice to Parent in Dependency Action, which she signed.

¶3        The juvenile court issued a preliminary protective order under which Mother was ordered to engage in reunification services that included: Arizona Family First substance abuse assessment, Family Drug Court, parenting classes, supervised visitation, psychological evaluation, random urinalysis tests twice per week, and a hair follicle test.  The court also admonished Mother that failure to attend future hearings, including mediations or pre-trial conferences, without good cause could lead to waiver of legal rights and admission of allegations in the petition, and that a hearing could proceed in her absence.

¶4        Mother attended an intake for Arizona Family First, but did not complete it.  She did not submit random urinalysis tests twice every week, and in the twelve instances in which she did submit them, she tested positive for THC, the principle psychoactive component in cannabis.  *See State ex rel. Montgomery v. Harris*, 237 Ariz. 98, 99 n.1, ¶ 1 (2014); Ariz. Rev. Stat. ("A.R.S.") § 13-3401(4)(b).  She also tested positive for THC and methamphetamine on a hair follicle test.  Although parent aide progress reports showed that mother interacted with E.S. in a loving and caring manner during scheduled visits, Mother failed to attend many

---

[1] Initially this matter was handled by the Arizona Department of Economic Security ("ADES").  The Department of Child Safety has been substituted for the ADES and any reference to DCS shall encompass either ADES or DCS as appropriate.

of the visits, even when DCS offered to provide transportation. Finally, while several inpatient treatment programs were set up for Mother, she did not enter any of them.

¶5        DCS filed a motion to terminate Mother's rights based on A.R.S. § 8-533(B)(3) and § 8-533(B)(8)(b). At the initial hearing the court set dates for mediation, a pretrial conference, and an adjudication hearing. Mother attended the initial hearing telephonically and a Form 3 Notice to Parent in Termination Action was provided to her counsel, and then presumably to her, containing the following admonition:

> You are required to attend all termination hearings. If you cannot attend a court hearing, you must prove to the Court that you had good cause for not attending. If you fail to attend the Initial Termination Hearing, Termination Pre-trial Conference, Status Conference, or Termination Adjudication Hearing without good cause, the Court may determine that you have waived your legal rights and admitted the grounds alleged in the motion/petition for termination. The hearings may go forward in your absence, and the Court may terminate your parental rights to your child based on the record and evidence presented.

¶6        Mother attended the first mediation session telephonically but did not attend — in person or by telephone — the following mediation session, pretrial conference, or adjudication hearing. Mother made no motion or request for permission to participate telephonically in either the pretrial conference or the adjudication hearing. Counsel for Mother argued at both the pretrial conference and the adjudication hearing that Mother had good cause for her absence because she was incarcerated in Colorado. The juvenile court determined that Mother did not have good cause for her absences.

¶7        During the adjudication hearing, Ms. Davison, an ICWA expert, testified that DCS had made "active efforts to prevent the breakup of the Indian family" by offering Mother rehabilitative and reunification programs. Davison also stated she believed that continued custody of E.S. by Mother would be likely to result in serious emotional or physical damage to E.S. because of Mother's substance abuse, homelessness, and recent criminal activity. Finally, Davison stated that the Choctaw Nation supported the case plan of severance and adoption for E.S.

¶8        Ms. Stell, the DCS case manager, testified that Mother admitted to having a chronic history of addiction to methamphetamine. Stell also testified that

3

Mother did not comply with several court orders to obtain substance abuse counseling and testing, and when Mother did submit to testing, she tested positive for THC and methamphetamine on multiple occasions. Finally, Stell testified that DCS had made efforts to provide rehabilitative services to Mother throughout the process.

¶9 The juvenile court took the matter under advisement and then issued a ruling granting DCS's motion for termination of parent-child relationship. The court held that Mother was given proper legal notice of the hearings, was absent at the pretrial conference and the contested adjudication hearing without good cause shown, and was therefore deemed to have admitted the factual allegations. The court determined that Mother was unable to discharge her parental responsibilities due to a history of chronic drug abuse with reasonable grounds to believe the condition would continue for a prolonged indeterminate period. The court also held that, at the time of the filing of the Motion for Termination, the child was under three years old and had been in an out-of-home placement for six months or longer and Mother had substantially neglected or willfully refused to remedy the causal circumstances. Finally, the court found that termination of parental rights was in E.S.'s best interests. Mother timely appeals and we have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## ANALYSIS

¶10 A parent's right to custody of his or her child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000). A parent's rights may be severed if the juvenile court finds by clear and convincing evidence at least one statutory ground and by a preponderance of the evidence that severance is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005); A.R.S. § 8-533(B). The juvenile court is in the best position to weigh the evidence and make findings, and we will affirm an order terminating parental rights unless no reasonable evidence supports the court's findings. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We view the evidence in the light most favorable to upholding the juvenile court's order. *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 95, ¶ 10 (App. 2009).

¶11 Mother presents four arguments. First, she contends the juvenile court erred when it found no good cause for her absences and ruled that she had admitted all allegations and forfeited her legal rights. Second, she argues that DCS did not prove the elements of A.R.S. § 8-533(B)(3). Third, she asserts that DCS did

not prove the elements of A.R.S. § 8-533(B)(8)(b).[2]  Finally, Mother contends that termination was not in E.S.'s best interests.

### I.       Mother Failed to Appear Without Good Cause.

**¶12**       A finding of good cause is largely discretionary, and we will affirm the juvenile court's finding absent an abuse of discretion. *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 101, ¶ 15 (App. 2007) (finding that unless "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons," the juvenile court's decision will not be set aside) (internal quotation and citation omitted).

**¶13**       Under A.R.S. § 8-863(C) and Rule 66(D)(2) of the Arizona Rules of Procedure for the Juvenile Court, a parent who fails to appear at the termination adjudication hearing without good cause may be held to have admitted the allegations in the motion or petition for termination and to have waived her legal rights.  *See also Manuel M. v. Arizona Dep't of Econ. Sec.*, 218 Ariz. 205, 211, ¶¶ 19–20 (App. 2008) (holding that a parent's failure to appear at a termination adjudication may constitute a waiver of rights if the parent had been informed he or she could lose those rights by failing to appear).  In order to show good cause for not appearing, the parent must show both a meritorious defense and either mistake, inadvertence, surprise, or excusable neglect.  *Christy A. v. Arizona Dep't of Econ. Sec.*, 217 Ariz. 299, 304, ¶ 16 (App. 2007).

**¶14**       Mother argues that her absences should be attributed to excusable neglect because she was incarcerated in Colorado and was unable to appear in person on her own volition.  "Excusable neglect exists if the neglect or inadvertence 'is such as might be the act of a reasonably prudent person in the same circumstances.'"  *Id.* (quoting *Ulibarri v. Gertenberger*, 178 Ariz. 151, 163 (App. 1993)).

**¶15**       Mother did not attempt to participate by telephone in either the pretrial conference or the adjudication hearing.  Although physical attendance may have been impossible due to her incarceration, Mother had attended the initial hearing telephonically and presumably could have done so for the later hearings as well.  On this record, reasonable evidence supports the juvenile court's

---

[2] Because we find that DCS proved the required elements of A.R.S. § 8-533(B)(3), we do not consider Mother's argument regarding A.R.S. § 8-533(B)(8)(b).  *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000) (holding that when severance is affirmed on one statutory ground, the court need not consider other grounds).

conclusion that Mother did not establish good cause for her non-appearances, and the court did not abuse its discretion in finding no excusable neglect.

¶16        Mother also argues that this determination violates her due process rights.  Due process requires that the state provide reasonably calculated notice to all interested parties and afford them an opportunity to present their objections. *Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, 92, ¶ 16 (App. 2005).  Here, Mother was given proper notice of both the hearing dates and the possible consequences of missing those hearings.  Mother had been advised at the initial hearing of the date of the adjudication hearing, and we presume Mother received Form 3 including the admonition from her attorney.  Mother, through counsel, did not argue at the adjudication hearing that she did not have notice, and she does not argue on appeal that she did not have notice.  She was previously allowed to appear telephonically and she was represented by counsel who was able to cross-examine witnesses and make objections at all hearings.  Accordingly, Mother had notice and an opportunity to be heard.  Due process was properly afforded Mother.

¶17        Because Mother did not establish good cause for her non-appearance at the termination adjudication hearing, we need not address whether Mother had or presented a meritorious defense.

## II.    History of Chronic Abuse of Dangerous Drugs

¶18        A juvenile court may sever parental rights if it is shown by clear and convincing evidence that the parent "is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period."  A.R.S. § 8-533(B)(3); *see also Michael J.*, 196 Ariz. at 249, ¶ 12.

¶19        The evidence at trial revealed that Mother has a chronic history of addiction to methamphetamines, with unsuccessful attempts to quit.  Mother admitted to having an addiction to methamphetamines and to using methamphetamines while pregnant with E.S. as well as shortly after his birth.  The trial testimony of both Davison and Stell, as well as several exhibits admitted into evidence, provided further support for the termination.

¶20        Although Mother scheduled an intake with Arizona Families First, she did not complete their assessment. Furthermore, Mother failed to comply with the court order for two random urinalysis tests per week; and when she did submit to drug testing, the results indicated continued drug use including two positive

tests for methamphetamine. Finally, she did not participate in any of the inpatient-treatment programs offered by her probation officer in Colorado.

**¶21** Mother argues that her current incarceration provides a "clean and sober living environment" and therefore her drug use is not likely to continue for a prolonged, indeterminate period. But the record reveals that Mother was unable to live a clean and sober life when not incarcerated. This court in *Raymond F. v. Arizona Dep't of Econ. Sec.*, 224 Ariz. 373, 378, ¶ 25 (App. 2010), quoted with approval from *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998), as follows:

> Thus, in considering the impact of drug addiction, we must consider the treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future. Where the parent has been unable to rise above the addiction and *experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting*.

(Emphasis added.)

**¶22** When viewed in the light most favorable to upholding the juvenile court's termination decision, the evidence reasonably supports the juvenile court's determination that Mother had a history of chronic abuse of dangerous drugs with reasonable grounds to believe the condition would continue for a prolonged, indeterminate period. Therefore, the juvenile court did not abuse its discretion in determining by clear and convincing evidence that this statutory basis for severance was established.

### III.   Child's Best Interests

**¶23** To determine whether severance is in the child's best interests, the juvenile court must consider whether the child would benefit from a severance or be harmed by the continuation of the relationship. *Mary Lou C. v. Arizona Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004) (citing *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990)). The best interests requirement may be met if the child is adoptable, even if no adoption plan exists at the time. *Id.* (citing *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994).

**¶24** Sufficient evidence was presented at trial to show not only that severance would benefit E.S., but that E.S. would be harmed and neglected if the relationship continued. Stell testified that E.S. is in an adoptive placement with his great-grandmother and sibling. She testified that severance would benefit E.S.

because it would provide stability and permanency and allow an adoption plan to move forward. Stell also testified that continuation of the relationship would harm E.S. by putting him at risk due to Mother's inability to care for him, substance abuse issues, lack of housing, and inability to financially support him. Finally, the current placement falls within the placement preferences of the ICWA. Therefore, the juvenile court acted within its discretion when it determined that severance would be in the best interests of the child.

## CONCLUSION

¶25 Finding no abuse of discretion or legal error, we affirm the juvenile court's termination of Mother's parental rights to E.S.



Ruth A. Willingham · Clerk of the Court
FILED: ama