173 P.3d 463

**CHRISTY A., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Courtney A., Billy A., Appellees.**

**No. 1 CA–JV 07–0078.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 24, 2007.

Robert D. Rosanelli, Phoenix, Attorney for Appellant.

Terry Goddard, Arizona, Attorney General by Carol A. Salvati, Assistant Attorney General, Phoenix, Attorneys for Appellee Arizona Department of Economic Security.

Bruce Peterson, Office of the Legal Advocate by Pamela J. Eaton, Deputy Legal Advocate, Phoenix, Guardian ad Litem for Appellees Courtney A. and Billy A.

## OPINION

WINTHROP, Judge.

¶ 1 Christy A. ("Mother") appeals from the juvenile court's order denying her motion to set aside the entry of default and default judgment terminating her parent-child relationship with Courtney A. and Billy A. (collectively "the children") pursuant to Arizona Revised Statutes ("A.R.S.") section 8–533(B)(8)(a)–(b) (2007),[1] the provisions permitting severance based on nine-month and fifteen-month out-of-home placement. Mother argues that the court (1) abused its discretion in denying her motion to set aside the entry of default and default judgment, (2) denied her due process by excluding her from the evidentiary adjudication hearing, (3) denied her effective assistance of counsel by conducting that adjudication hearing in absence of counsel, and (4) denied her due process by advising Arizona Department of Economic Security ("ADES") of the appropriate procedure to use in responding to a potential motion to set aside judgment. For the following reasons, we affirm in part, vacate in part, and remand for further proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On April 22, 2005, the Peoria Police Department executed a lawfully authorized

---

1. We cite the current version of the statute when no revisions material to this decision have occurred.

search warrant on the property where Mother and the children resided.[2] Because of concerns that drugs, drug paraphernalia, and firearms found in the front house were within the reach of the children, the trailer had rotting food and exposed wiring, and the children were "somewhat dirty," the Peoria Police Department called Child Protective Services ("CPS"). The children were taken into CPS's custody and eventually placed with Mother's great aunt and uncle.

¶ 3 On April 28, 2005, ADES filed a dependency petition regarding the children, alleging that Mother was unable to parent due to unsafe conditions at home, substance abuse, and neglect stemming from the April 22 incident. At a preliminary protective hearing on May 3, 2005, Mother denied the allegations of the petition and submitted the issue to the juvenile court. The juvenile court found the allegations of the petition to be true by a preponderance of the evidence and that the children were dependent as to Mother. ADES offered reunification services, including visitation with the children, urinalysis testing, parenting classes, Value Options, mental health assessment, TERROS Family First, psychological evaluation with recommendations, transportation, bus tickets, and assistance in obtaining stable housing and income. Mother failed to substantially comply with most of the services offered but was "fairly consistent" in visiting her children. At an April 7, 2006 permanency planning

hearing, the juvenile court granted ADES's motion to change the case plan from reunification to severance and adoption.

¶ 4 On April 12, 2006, ADES filed a motion to terminate Mother's parental rights on the grounds that she was unable to discharge her parental responsibilities due in part to a history of chronic substance abuse and that she had substantially neglected or willfully refused to remedy the circumstances that caused the children to remain in out-of-home placement for a cumulative time period of nine months or more. See A.R.S. § 8–533(B)(3), (8)(a). ADES later amended the motion to include out-of-home placement for a cumulative time period of fifteen months or more as an additional ground for severance. See A.R.S. § 8–533(B)(8)(b). The motion further alleged that termination of Mother's parental rights was in the children's best interests.[3]

¶ 5 At a May 5, 2006 initial severance hearing, Mother denied the allegations of the motion and requested a jury trial, and the juvenile court advised and provided her with a Form III, "Notice to Parent in Termination Action."[4]

¶ 6 The juvenile court originally scheduled a severance jury trial for July 31, 2006. However, after being rescheduled several times,[5] the trial was eventually scheduled for December 15, 2006.

2. The search warrant was executed due to code compliance violations, manufacturing of money, and drug activity. The property included three structures that housed three different families: the front house, a trailer in the back yard where Mother and the children were living, and a camper shell.

3. The motion also sought to terminate the parental rights of the children's fathers. Although the court later terminated the fathers' rights, neither of the fathers is a party to this appeal.

4. Form III states in pertinent part:
You are required to appear for all termination hearings. If you cannot attend a court hearing, you must prove to the Court that you did not appear for good cause. If you fail to appear without good cause for the termination pre-trial conference, the termination settlement conference, [or] the termination adjudication, the Court may determine that you have waived your legal rights, including the right to a jury trial, that you've admitted the grounds

alleged in the motion for termination, and may terminate your parental rights to your child based on the record and evidence presented.

5. The multiple trial dates were partially due to the fact that Mother has had several attorneys throughout these hearings. Originally, Diane Leos was appointed as counsel, but Ms. Leos withdrew due to irreconcilable differences.

The July 31 trial was rescheduled to August 25, 2006 due to the serious illness of the assistant attorney general assigned to the case and late disclosure of documents to be offered as evidence. James Braden was appointed as counsel for Mother, but he had to withdraw due to medical issues, and the trial date was ultimately rescheduled to October 20, 2006.

Subsequently, Kerstin LeMaire of the Law Office of Lon Taubman was appointed; however, due to a scheduling conflict, Ms. Rhodes, another attorney at the same law firm, agreed to be counsel for Mother. Although the juvenile court did not think that Ms. Rhodes' previous govern-

¶ 7 Mother failed to personally appear on December 15, 2006, but her court-appointed counsel did appear, and re-urged the pending motion to withdraw as counsel. ADES and the guardian ad litem for the children moved to default Mother and to permit ADES to proceed with the severance hearing in absentia. The juvenile court entered a default against Mother; however, due to court congestion and the scheduling of other matters, testimony to establish the severance grounds and best interests was postponed until December 22, 2006. The court then granted the motion to withdraw filed prior to trial by Mother's court-appointed counsel.

¶ 8 Now unrepresented,[6] Mother appeared at the start of the December 22, 2006 hearing and made an oral request that the previously entered default be set aside. The juvenile court reappointed the same counsel to assist Mother in determining whether there were grounds to file an appeal or a motion to set aside judgment, but then excluded Mother from the hearing. After Mother was ordered to leave, the juvenile court received testimony from Sandra Lopez, the assigned case manager, and documentary evidence offered by ADES. At the conclusion of the hearing, the juvenile court granted the motion for termination of Mother's parental rights, finding that ADES had proven by clear and convincing evidence that grounds for severance existed pursuant to A.R.S. § 8–533(B)(8)(a)–(b) and that termination of Mother's parental rights was in the children's best interests.[7] On January 8, 2007, the juvenile court filed a signed order terminating Mother's parental rights as to the children.

¶ 9 Because appointed counsel might be a potential witness if a motion to set aside judgment were filed, the juvenile court, on January 12, 2007, appointed Stephen Wallin as Mother's counsel.

¶ 10 On March 7, 2007, Mother filed a motion to set aside the entry of default and default judgment, and ADES and the guardian ad litem for the children filed responses.[8] On March 28, 2007, the juvenile court held an evidentiary hearing on Mother's motion and took the matter under advisement. On April 16, 2007, the juvenile court in a signed minute entry denied Mother's motion.

¶ 11 Appellant filed a timely notice of appeal. We have appellate jurisdiction pursuant to A.R.S. § 8–235(A) (2007) and Rule 88(A) of the Arizona Rules of Procedure for the Juvenile Court ("ARPJC").

## ANALYSIS

### I. Entry of Default on December 15, 2006

¶ 12 On appeal, Mother argues that the juvenile court abused its discretion in denying her motion to set aside the entry of default. We disagree.

¶ 13 On December 15, 2006, the date set for the termination adjudication hearing, Mother failed to appear. Before defaulting Mother, the juvenile court questioned Mother's attorney and Ms. Lopez regarding Mother's nonappearance. Mother's attorney told the court that his law firm sent a letter on October 22, 2006 to Mother's last known address advising her of the December 15, 2006 trial date. According to Ms. Lopez, she

---

ment employment and ministerial role in signing the dependency petition in this case constituted a conflict of interest, the juvenile court granted Ms. Rhodes' motion to withdraw but affirmed the appointment of Ms. LeMaire and the Law Office of Lon Taubman as counsel for Mother, and reset the trial date to December 15, 2006.

Prior to the trial, Ms. LeMaire filed another motion to withdraw stating that because she had not had direct contact with Mother since October 11, 2006, despite several attempts to contact Mother, she could not adequately prepare for trial.

6. We note that on May 5, 2006, James Myres was appointed guardian ad litem for Mother because there were concerns about her comprehension

and ability to follow the proceedings. Although endorsed on the pertinent minute entries setting these hearings, Mr. Myres did not attend either the December 15 or December 22 hearings.

7. Although the petition to terminate Mother's parental rights also listed as an alternative basis for severance a history of chronic substance abuse, the court only has to find that one severance ground has been met before terminating parental rights. See A.R.S. § 8–533(B).

8. ADES's response is not in the official record on appeal, but the juvenile court stated that it had received and reviewed the responses from both ADES and the guardian ad litem for the children.

hand-delivered a letter to Mother on October 26, 2006, informing her of the date, time, and place of the December 15 trial and orally discussed with Mother the importance of being present at all the hearings and of contacting her attorney. The juvenile court found that Mother had been previously provided with a Form III notice advising her of the need to appear at all court hearings, had been advised at prior hearings that her presence was required at all hearings, had been advised by counsel and Ms. Lopez regarding the date and time of the trial, and had not shown good cause for her absence. Accordingly, the juvenile court entered a default as to Mother pursuant to A.R.S. § 8–537(C) (2007) and ARPJC 66(D)(2).[9]

¶ 14 As an initial matter, we observe that neither A.R.S. § 8–537(C) nor ARPJC 66(D)(2) expressly adopts or references the concept of "default"; rather, both speak in terms of "waiver of rights." However, it is apparent that, in practice, the juvenile court has engrafted the concept of "default" from Rule 55 of the Arizona Rules of Civil Procedure ("ARCP") into the juvenile court rules or, at least, is utilizing the "default" terminology when a parent fails to appear. We think the better course would be for the juvenile court to instead consider whether the parent can show "good cause" as to why they failed to personally appear, and whether, under the circumstances, such failure should constitute a "waiver of rights."

¶ 15 In her subsequent motion to set aside the default, Mother argued that on December 14, 2006, she was told by Ms. Lopez that the trial had been continued again and that Ms. misstatement constituted excusable neglect.[10] Mother also argued that she had a "meritorious defense"[11] on the issue of best interests because she had consistently visited her children and was strongly bonded to them.

¶ 16 Although not completely analogous in parental cases, we find the general case law concerning defaults in civil cases, particularly as it relates to finding a waiver of rights, to be instructive. A trial court may set aside an entry of default if there is "good cause shown." Ariz. R. Civ. P. 55(c). "The test of good cause is the same for an entry or judgment of default." *Webb v. Erickson,* 134 Ariz. 182, 185–86, 655 P.2d 6, 9–10 (1982). In order to show good cause, the moving party must show that (1) mistake, inadvertence, surprise or excusable neglect exists and (2) a meritorious defense to the claims exists. *Richas v. Superior Court,* 133 Ariz. 512, 514, 652 P.2d 1035, 1037 (1982); *see* Ariz. R. Civ. P. 60(c). Excusable neglect exists if the neglect or inadvertence "is such as might be the act of a reasonably prudent person in the same circumstances." *Ulibarri v. Gerstenberger,* 178 Ariz. 151, 163, 871 P.2d 698, 710 (App.1993). "A meritorious defense must be established by facts and cannot be established through conclusions, assumptions or affidavits based on other than personal

---

**9.** A.R.S. § 8–537(C) provides that if a parent fails to appear at the termination adjudication hearing, the juvenile court "may find that the parent has waived the parent's legal rights and is deemed to have admitted the allegations of the petition" and may proceed to terminate the parent-child relationship "based on the record and evidence presented as provided in rules prescribed by the supreme court." ARPJC 66(D)(2) states that a "failure to appear may constitute a waiver of rights" if a parent fails to appear at the initial termination adjudication hearing without good cause shown. In that instance, "the court may terminate parental rights based upon the record and evidence presented if the moving party or petitioner has proven grounds upon which to terminate parental rights." Ariz. R.P. Juv. Ct. 66(D)(2).

**10.** Both the trial court and counsel in the trial court and on appeal have used the phrase "ex-

cusable neglect" rather than "good cause" as set forth in the applicable statute and rule. We recognize that "excusable neglect" is one of the grounds available under ARCP 55(c) and 60(c) for the setting aside of defaults and default judgments. Under the facts of this case, we agree it is appropriate to apply the concept of "excusable neglect" in evaluating the ultimate question of whether "good cause" exists to justify Mother's nonappearance.

**11.** Similarly, the concept of "meritorious defense" is neither explicitly referenced nor implicit in either the statute or the juvenile court rules of procedure. In the context of a severance proceeding, we consider a "meritorious defense" to constitute nothing more than a good faith basis upon which to contend that the petitioner cannot prove a statutory basis for termination and/or that termination is not in the best interests of the child.

knowledge." *Richas,* 133 Ariz. at 517, 652 P.2d at 1040. For the following reasons, we affirm the juvenile court's denial of Mother's motion to set aside the entry of default.

¶ 17 At the March 28, 2006 evidentiary hearing to determine whether excusable neglect existed for Mother's failure to appear, all parties agreed that the only factual dispute was whether Ms. Lopez told Mother that the severance trial had been continued again and that the hearing would not proceed on December 15. Mother testified that she did know the trial was scheduled for December 15, 2006. However, on "the day before or a couple days before" December 15 when Mother went to the CPS's office to visit her children, Ms. Lopez told her the trial had been "postponed again" so Mother did not appear on December 15. Ms. Lopez, however, denied telling Mother that her December 15 trial had been continued and testified that she had not had any contact with Mother since November 17, 2006.

¶ 18 The juvenile court took the matter under advisement and issued a ruling detailing its findings of fact and conclusions of law:

> Mother has not shown excusable neglect. At best, she has shown that she believed the trial was going to be continued on December 15, 200[6]. However, she was also made aware by this Court at numerous hearings that she was required to appear at all hearings and that failure to appear could result in the consequences set forth in Form III and under [ARPJC 66(D)].
>
> Mother also suggests that she was the victim of fraud or misrepresentation by the case manager, Sandra Lopez. The Court finds this claim to be utterly incredible and without substance. Simply put, this Court does not believe that [M]other was being truthful. Her testimony was unconvincing. The testimony of the case manager on [M]other's claims of misrepresentation

[was] clear and convincing. There is no merit to Mother's claim that she was misled regarding the trial that was scheduled to commence on December 15.

> Finally, Mother has not shown that she has [a] meritorious defense to the Department's allegations as set forth in the Motion to Terminate the Parent–Child Relationship. She makes only the conclusory statement (not supported by affidavit) that because her children "are strongly bonded to her" . . ., severance is not in the children's best interest.

Accordingly, the juvenile court denied Mother's motion to set aside the entry of default.

¶ 19 Because evaluating the credibility of witnesses is left to the sound discretion of the trial court, *see Haas v. Morrow,* 54 Ariz. 455, 456, 97 P.2d 204, 204 (1939), we are unable to say that the juvenile court abused its discretion in finding that Mother failed to establish good cause.[12] *See Richas,* 133 Ariz. at 514, 652 P.2d at 1037 (holding that a trial court's denial of a motion to set aside an entry of default is reviewed for an abuse of discretion). Therefore, we affirm the juvenile court's denial of Mother's motion to set aside the entry of default, and that judicially-determined waiver of rights stands.

*II. Entry of Judgment on December 22, 2006*

¶ 20 Due to scheduling issues on December 15, 2006, the juvenile court continued the evidentiary hearing contemplated by A.R.S. § 8–537(C) and ARPJC 66(D)(2) to December 22, 2006. On that date, Mother did appear, and asked the court to withdraw the entry of default; however, at that time, she offered no explanation for her failure to appear on December 15. The juvenile court refused to entertain her oral motion to set aside the entry of default but indicated she could file a written motion. Originally, the juvenile court was going to have Mother

---

**12.** On appeal, Mother also contends that excusable neglect existed because Ms. Lopez failed to comply with the court's order requiring Ms. Lopez to "inform [Mother] of the possible imposition of sanctions should [she] fail to appear for trial." As this issue was not raised below, we do not consider it on appeal. *Christy C. v. Ariz. Dep't of Econ. Sec.,* 214 Ariz. 445, 452, ¶ 21, 153 P.3d 1074, 1081 (App.2007) ("We generally do not consider objections raised for the first time on appeal."). We do note, however, that based upon the uncontroverted receipt of the Form III notice, and as argued by the guardian ad litem for the children, Mother was clearly aware of the potential ramifications should she fail to appear at the scheduled termination hearing.

hand write a motion to submit to the court that day for consideration on the issue of whether excusable neglect existed for her failure to appear. After consideration, however, the court appropriately decided to reappoint counsel to help Mother prepare a motion to set aside judgment. However, the court then directed Mother to leave the hearing and proceeded, pursuant to the applicable statute and rule, to hear testimony regarding the termination of Mother's parental rights as to the children. In the absence of Mother, her attorney, and her guardian ad litem, the court heard testimony from Ms. Lopez (the assigned case manager) as to how CPS became involved in this case, the nature and length of time of the children's out-of-home placement, Mother's lack of compliance with the reunification services offered by ADES, and the reasons that termination of Mother's parental rights would be in the best interests of the children. Ms. Lopez also testified about the October 26, 2006 letter that she hand-delivered to Mother informing her of the December 15 trial date, a copy of which was admitted into evidence. After the juvenile court made findings relating to the statutory grounds for termination and the best interests of the children, the court entered judgment against Mother, terminating her parental rights as to the children.

¶ 21 On appeal, Mother raises three issues regarding the evidentiary hearing: (1) the juvenile court violated her due process right by excluding her from the hearing; (2) the juvenile court denied her effective assistance of counsel by conducting the hearing in absence of counsel; and (3) the juvenile court violated her right to a fair and impartial judge by advising ADES of the appropriate procedure to use in responding to a potential motion to set aside the default and any subsequent judgment.

### A. Participation at Evidentiary Hearing

■ ¶ 22 Parents have a fundamental interest in the care, custody, and control of their children, which interest is protected by the Due Process Clause of the United States Constitution. *Mara M. v. Ariz. Dep't of Econ. Sec.*, 201 Ariz. 503, 507, ¶ 24, 38 P.3d 41, 45 (App.2002) (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Thus, "when the State acts to terminate this right, it must provide appropriate fair procedures." *Id.* Mother argues that such fair procedures include having a right to be present and to participate at an evidentiary hearing concerning termination of parental rights, and we agree.[13]

■ ¶ 23 Although not controlling, we again find guidance in established case law concerning the entry of default judgments. Arizona courts have previously held that, even when a default has been entered, a defaulted party has a right to participate in any further proceedings that will culminate in a judgment. For example, in personal injury cases, "[an] entry of default constitutes only a judicial admission of liability and not of the amount of recovery when the claim is unliquidated"; therefore, the trial court should allow a defaulting party to "cross-examine and even present counterproof." *Dungan v. Superior Court*, 20 Ariz.App. 289, 290, 512 P.2d 52, 53 (1973); *see Mayhew v. McDougall*, 16 Ariz.App. 125, 130, 491 P.2d 848, 853 (1971) (holding that a defaulted defendant has the right to contest the issue of damages). Arizona courts have also extended the *Dungan* rule to tax appeals. *See Ariz. Dep't of Revenue v. Superior Court*, 165 Ariz. 47, 50, 796 P.2d 479, 482 (App.1990).

■ ¶ 24 Considering the above, and in light of a parent's fundamental parenting interest, we hold the entry of default or, more properly stated, a finding of waiver of rights, precludes Mother from affirmatively presenting testimony or other documentary evidence to contest the statutory bases for termination, but the requirement of fair procedures mandates giving Mother the opportunity to remain in the courtroom and participate. That right of participation includes cross-examination of ADES's witnesses and testifying if she so desires as it relates to the issue of the best interests of the children.[14]

13. ADES concedes on appeal that "it was not fundamentally fair for the juvenile court to refuse to allow Mother to participate in or even attend her severance adjudication hearing."

14. Although the court certainly has the authority

¶ 25 We recognize this set of facts and procedural posture—where court-appointed counsel had been allowed to withdraw and Mother was then excluded from the courtroom—is unusual, and perhaps is unlikely to occur again. In the more typical scenario where the parent fails to appear but is still represented by counsel, the court may proceed in that parent's absence because his or her rights will be protected by the presence and participation of counsel.

## B. Right to Counsel at Evidentiary Hearing

¶ 26 Similarly, Mother argues that "fair procedures" also include the right to be represented by counsel at the December 22 evidentiary hearing, and we agree.

¶ 27 "In determining the extent to which counsel for a defaulting party may participate, a court may well ask itself: Can counsel for the defaulting [party] make any material contribution in aiding the trier of fact in the search for truth?" *Dungan*, 20 Ariz.App. at 291, 512 P.2d at 54. The answer is affirmative in the case of "default" adjudication hearings terminating the parent-child relationship because of the fundamental interest at issue.

¶ 28 For termination adjudication hearings, indigent parents have a right to appointed counsel pursuant to A.R.S. § 8–221(B) (2007) and the Due Process Clause of the United States Constitution. *See Pima County Juv. Action No. J–64016*, 127 Ariz. 296, 298, 619 P.2d 1073, 1075 (App.1980). Therefore, "the failure to allow counsel to effectively participate in severance proceedings is reversible error," *Daniel Y. v. Ariz. Dep't of Econ. Sec.*, 206 Ariz. 257, 260, ¶ 12, 77 P.3d 55, 58 (App.2003), because "the denial of the right to effective participation of counsel constitutes a denial of due process of law so gross as to lack a necessary attribute of a judicial determination." *Id.* (quoting

*Ariz. State Dep't of Pub. Welfare v. Barlow*, 80 Ariz. 249, 253, 296 P.2d 298, 300 (1956)). Because the juvenile court considers essentially the same evidence at a "default" evidentiary hearing as at a typical "contested" severance adjudication hearing, a parent, even though in "default," should also have a right to have counsel present and participate.

¶ 29 In this case, the juvenile court had previously granted a motion to withdraw filed by Mother's appointed attorney. Accordingly, that attorney did not appear on Mother's behalf at the December 22 hearing. For some reason not discernible in the record, Mother's guardian ad litem was also not present at the December 22 hearing. As a result, Mother appeared at the evidentiary hearing without counsel. However, prior to beginning the evidentiary hearing, the juvenile court reappointed counsel to assist Mother in preparing a motion to set aside judgment. As neither appointed counsel nor Mother's guardian ad litem was present at the evidentiary hearing, Mother's interests were not represented at such hearing. Because we hold that Mother was entitled to appear and participate to a limited extent in the evidentiary hearing, fair procedures also require that Mother be entitled to the assistance and/or representation of counsel at that hearing. Accordingly, having reappointed counsel, the trial court should have briefly continued the evidentiary hearing to allow counsel the opportunity to appear and participate.

## C. Instructions to Opposing Counsel

¶ 30 After the juvenile court terminated Mother's parental rights at the evidentiary hearing, the court told ADES to attach an affidavit from Ms. Lopez as well as a copy of the October 26, 2006 letter to its response if Mother filed a motion to set aside judgment.[15] Mother contends that the juvenile

---

under certain circumstances to exclude individuals from court hearings, we see nothing in the record to support a finding that Mother's presence "would impede the full and fair presentation of the evidence," or that excluding Mother was in the best interests of the children or necessary to protect some identifiable privacy interest. Ariz. R.P. Juv. Ct. 41(A)-(B).

15. Specifically, the juvenile court said:
   The other thing is just a heads up. In terms of a response, it would probably be proper— the most appropriate way to handle a response if one is required, is to support it by an affidavit of Ms. Lopez on the issue of notice, you know, and attach that letter again as an exhibit, you know, to her affidavit. Okay?

court's instructions to ADES violated her right to a fair and impartial judge. We disagree.

 ¶ 31 The trial court has discretion to control the courtroom and trial proceedings. *Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 91, ¶ 33, 977 P.2d 807, 813 (App.1998). "We will not interfere in matters within [the trial court's] discretion unless we are persuaded that the exercise of such discretion resulted in a miscarriage of justice or deprived one of the litigants of a fair trial." *O'Rielly Motor Co. v. Rich*, 3 Ariz.App. 21, 27, 411 P.2d 194, 200 (1966).

¶ 32 In this case, in an attempt to control the proceedings, the juvenile court gave instructions on what it wanted to see if a response was filed regarding a motion to set aside judgment. Being able to readily review Ms. Lopez's affidavit and the October 26, 2006 letter while considering a motion to set aside judgment would facilitate the juvenile court's determination of whether grounds exist to set aside the judgment. The court would not have to search through the entire record to find the relevant documents. In addition, those documents would give notice to Mother of ADES's position on the issue, and Mother could file an appropriate reply memorandum if necessary. As such, the juvenile court's instructions to ADES were merely procedural in nature and did not deprive Mother of a fair trial as she was able to contest the affidavit and the letter at an evidentiary hearing held on March 28, 2007. We find no abuse of discretion in this regard.

## CONCLUSION

¶ 33 We decline to set aside the waiver of rights, but hold that fairness dictates that the juvenile court allow Mother to participate with the assistance of counsel at the evidentiary hearing. *See Mayhew*, 16 Ariz.App. at 130, 491 P.2d at 853 (holding that the appellate court can affirm the entry of default and set aside the default judgment). Accordingly, we vacate the judgment and remand this

That way I think the record will be solid.

matter to the juvenile court to proceed in a manner consistent with this decision.

CONCURRING: MICHAEL J. BROWN, P.J., and DONN KESSLER, J.

