NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MARWA M., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, E.A., Y.A., N.A., Y.A., *Appellees.*

No. 1 CA-JV 16-0139
FILED 11-3-2016

Appeal from the Superior Court in Maricopa County
No. JD23942
The Honorable Cari A. Harrison, Judge

**AFFIRMED**

COUNSEL

Gates Law Firm LLC, Buckeye
By S. Marie Gates
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Christopher T. Whitten[1] joined.

---

**W I N T H R O P**, Judge:

¶1            Marwa M. ("Mother") appeals the juvenile court's order terminating her parental rights to E.A., Y.A., N.A., and Y.A. (collectively, "the children"). Mother contends the court abused its discretion in proceeding with a severance hearing after she failed to appear at a status conference. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY[2]**

¶2            Mother is the biological mother of the children, who were born between August 2006 and June 2012.

¶3            In June 2013, Mother reported to the Glendale Police Department that Amjad Z. ("Father")[3] physically assaulted her. The Department of Child Safety ("DCS") subsequently initiated a protective plan that helped Mother enter a domestic violence shelter. Mother then left the shelter to stay with a family friend.

¶4            In July 2013, DCS took the children into temporary physical custody when Mother and the children were unable to continue staying

---

[1]      The Honorable Christopher T. Whitten, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

[2]      We view the facts and the reasonable inferences therefrom in the light most favorable to sustaining the juvenile court's determinations. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18, 219 P.3d 296, 303 (App. 2009).

[3]      Father is referred to both as Amjad and Amgad throughout the juvenile court record. Father did not appeal the juvenile court's decision severing his parental rights and is not a party to this appeal.

with the family friend.  DCS then initiated a dependency petition, stating the children were dependent as to Mother due to neglect.  The petition alleged that (1) Mother reported a long history of domestic violence but failed to seek any help; (2) Mother had failed to provide the children with the basic necessities of life; and (3) Mother's June 2013 drug overdose showed that she was unable to safely parent due to her mental health issues. Mother denied the allegations in the dependency petition, but waived her right to contest them, submitting the issue to the court.[4]

¶5        In December 2013, the children were adjudicated dependent as to Mother.  The court approved a case plan of reunification concurrent with severance and adoption.  To support the goal of family reunification, the court ordered that Mother receive parent aide services, a psychological evaluation, transportation assistance, domestic violence counseling, and visitation.[5]

¶6        Over the next year and a half, the children continued in out-of-home care.  Mother participated in various services offered by DCS but failed to attend all of the children's appointments.

¶7        In September 2015, DCS moved to terminate Mother's parental rights based on her failure to remedy the circumstances that caused the children to remain in out-of-home care.  Specifically, DCS alleged that although Mother had been offered various services, she was still unable to effectively control the children and address their special needs during visitation, and she had not allowed one of the children to visit her.  DCS further alleged that Mother continued to be involved in violent relationships, stating that a domestic violence incident between Mother and her significant other occurred during Mother's visitation time, with one of the children trying to intervene.  Accordingly, pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(c),[6] DCS alleged there was a

---

[4]        In addition to appointed counsel, a court interpreter was provided for Mother during court appearances.

[5]        Nothing in the record indicates Mother or her attorney objected to these services, suggested they were inadequate, or requested any additional services at that time.

[6]        We cite the current version of the statutes if no revisions material to our decision have occurred since the relevant dates.

substantial likelihood that Mother would be incapable of exercising proper and effective parental care and control in the near future.

¶8            At an initial severance hearing in November 2015, Mother indicated her intent to contest DCS's allegations, and the court set the matter for mediation and pretrial conference. Mother failed to appear at the mediation hearing, but she attended the pretrial conference.

¶9            On January 21, 2016, the court conducted a report and review hearing, and Mother failed to appear. Mother's attorney informed the court that Mother did not have transportation. The court found that Mother did not have good cause for failing to physically appear, and set an evidentiary hearing on severance for February 19, 2016.

¶10            On February 19, 2016, the court first addressed Mother's failure to appear at the January 21 hearing. Mother's attorney stated that Mother did not appear because a taxi did not arrive, but conceded that the taxi was not one that was offered or provided by DCS. DCS argued that lack of transportation did not suffice as good cause not to appear, and that Mother could have called someone or used public transportation. Based on the evidence presented, the court affirmed its prior finding that Mother failed to appear without good cause.

¶11            The court then heard testimony regarding the severance motion. A DCS caseworker testified that the children had continued to remain in out-of-home placement for more than fifteen months and that Mother had not consistently participated in the services offered to her. The caseworker also testified that Mother failed to remedy the circumstances that caused the children to be in out-of-home care due to her continuing involvement in violent relationships and her inability to discipline or control the children during visitation. The caseworker further stated that she did not believe Mother was able to effectively parent the children at that time or in the near future.

¶12            At the conclusion of the hearing, the court found that DCS had proven a statutory basis for termination, and that severance of Mother's parental rights was in the children's best interest. Accordingly, the court terminated Mother's parental rights to all four children.

¶13            Mother filed a timely notice of appeal. We have appellate jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. § 8-235(A), and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

**ANALYSIS**

**¶14**        Mother argues that the juvenile court erred in finding that she lacked good cause for her failure to appear for the January 21, 2016 hearing. She contends the court denied her due process by failing to inquire further into the circumstances regarding her inability to obtain transportation on the date of the hearing.  We review a finding of good cause for failure to appear for an abuse of discretion.  *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 101, ¶ 15, 158 P.3d 225, 230 (App. 2007).

**¶15**        A parent in termination of parental rights proceedings initiated by motion has a statutory duty to appear at related hearings, and a failure to appear may constitute a waiver of the right to challenge the allegations in the severance motion.  *See* Ariz. R.P. Juv. Ct. 64, 66.  "[F]ailure to appear at the initial hearing, pretrial conference, status conference or termination adjudication hearing, without good cause, may result in a finding that the parent . . . has waived legal rights."  Ariz. R.P. Juv. Ct. 64(C).[7]  Waiver in the severance context may be properly set aside with a showing of "good cause."  *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 304, ¶ 16, 173 P.3d 463, 468 (App. 2007).  To establish good cause, a "party must show that (1) mistake, inadvertence, surprise or excusable neglect exists and (2) a meritorious defense to the claim exists."  *Id.*

     *I.*    *Lack of Transportation as Excusable Neglect*

**¶16**        Mother does not clearly set forth an argument for good cause, but she appears to be arguing that her failure to appear at the January 21 hearing was the result of excusable neglect.

**¶17**        Generally, parties are responsible for arranging their own transportation to a dependency action.  *Bob H. v. Ariz. Dep't of Econ. Sec.*, 225 Ariz. 279, 282, ¶ 13, 237 P.3d 632, 635 (App. 2010).  Here, Mother arranged her own transportation for the January 21 hearing, but it did not arrive. Mother argues that the juvenile court erred by failing to further inquire into the circumstances surrounding her lack of transportation.  But Mother does not cite any legal authority to support her argument that the juvenile court

---

7        Further, Mother and her counsel were specifically advised in prior court proceedings and via minute entries that Mother must attend these hearings and that her failure to do so could result in acceleration of the severance hearing and waiver of the right to contest the statutory bases for termination of parental rights.

has an affirmative duty to solicit information regarding good cause for a party's failure to appear and we know of none that exists.

**¶18**        To the contrary, the burden is on the moving party to show good cause for failing to appear. *See* Ariz. R.P. Juv. Ct. 66(D)(2); *Christy A.*, 217 Ariz. at 304, ¶ 16, 173 P.3d at 468 (citing *Richas v. Superior Court*, 133 Ariz. 512, 514, 652 P.2d 1035, 1037 (1982)).  Here, Mother's excuse that her taxi did not arrive is insufficient to establish good cause for failure to appear. *See Bob H.*, 225 Ariz. at 282, ¶ 13, 237 P.3d at 635.  Further, despite having a month to gather evidence and prepare her argument that good cause existed, Mother presented no additional evidence to the court to support such a showing.[8]  Accordingly, the juvenile court did not abuse its discretion in finding that Mother failed to appear without good cause.

   *II.    Meritorious Defense*

**¶19**        In order to prove the second element of the test for good cause, a party must also present evidence of a meritorious defense to the severance motion. *Christy A.*, 217 Ariz. at 304, ¶ 16, 173 P.3d at 468.  Here, Mother presented no evidence at the evidentiary hearing to support such an argument.  Mother's brief on appeal also fails to identify any meritorious defense to severance that might exist.

**¶20**        Moreover, the DCS caseworker's testimony regarding Mother's continued involvement in violent relationships, Mother's failure to consistently participate in services offered to her, and Mother's inability to effectively parent her children provided evidence supporting the juvenile court's finding that severance was in the children's best interest.  Accordingly, the juvenile court did not abuse its discretion in finding a lack of good cause for Mother's failure to appear on January 21, 2016. *See Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 93, ¶ 4, 210 P.3d 1263, 1264 (App. 2009) (stating that, on appeal, we will affirm the juvenile court's factual findings if supported by reasonable evidence).

---

[8]        Although DCS had provided Mother with transportation services in the past, the record does not reveal the scope of those services.  Significantly, Mother did not argue or provide any evidence that her failure to appear on January 21 was because she had relied on DCS to provide transportation, because she had requested transportation from DCS, or because DCS failed to respond or grant any such request.

## CONCLUSION

¶21 For the foregoing reasons, the juvenile court's order terminating Mother's parental rights to the children is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA