NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

KASEY A., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY and O.A., *Appellee*.

No. 1 CA-JV 19-0332
FILED 7-30-2020

Appeal from the Superior Court in Mohave County
No. B8015JD201804066
The Honorable Rick A. Williams, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

_____

**MEMORANDUM DECISION**

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge James B. Morse Jr. joined.

_____

**W E I N Z W E I G**, Judge:

**¶1**　　　　Kasey A. ("Mother") appeals from the juvenile court's order terminating her parental rights to O.A., arguing the court violated her due process right to counsel. Because the record shows no due process violation, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　Mother is the biological parent of O.A., born in October 2014. Father is not party to this appeal. Mother was arrested in May 2018 for possession of methamphetamine and drug paraphernalia. The Department of Child Services ("DCS") investigated and learned that Mother had been abusing methamphetamine for about 20 years. DCS also discovered that Mother had been homeless since O.A. was born and relied on other parties to provide shelter for her and her child.

**¶3**　　　　DCS removed O.A. and petitioned the juvenile court to find him dependent in July 2018, alleging Mother could not parent due to neglect, substance abuse and home conditions. Mother was represented by counsel at the July 26 initial hearing, although counsel was not formally appointed until August 6. She did not contest the dependency and the court found O.A. dependent.

**¶4**　　　　Mother's attorney moved to withdraw as court-appointed counsel on September 4 at Mother's request, citing "an irreparable conflict" that precluded counsel "from effectively representing [M]other." The court granted counsel's motion on September 6 and directed the Office of Indigent Services ("OIS") to appoint new counsel for Mother.

**¶5**　　　　A dependency review hearing was scheduled for November 1, but the juvenile court learned that OIS had "not yet appointed new Counsel for the Mother," found it was "unable to proceed until the new Counsel is present," and continued the hearing until December 13.

¶6 At the December 13 dependency review hearing, neither Mother nor new counsel appeared and the juvenile court "reset[]" the hearing for February 7, 2019. The transcript and minute entry from December 13 indicate that attorney David Martinez may have been appointed to represent Mother; and indeed, Martinez represented Mother through the termination hearing. The court also made findings at the December 13 hearing that the Indian Child Welfare Act did not apply and that DCS made "reasonable efforts at reunification" and "reasonable efforts to finalize" the permanency plan under the Adoption and Safe Families Act of 1997 ("ASFA"). 45 C.F.R. § 1356.21(b)(2) (2020).

¶7 Mother and her new counsel, Mr. Martinez, appeared at the rescheduled dependency review hearing on February 7. Mother raised no issue or argument about the juvenile court's ASFA findings.

¶8 DCS offered various services to Mother, including case-plan staffing, child and family team meetings, individual counseling, parenting classes, RBHA self-referral, substance abuse assessment, substance abuse treatment, team decision-making meeting, transportation, urinalysis testing and visitation. Mother did not cooperate in substance abuse testing, however, and DCS discontinued her supervised visitation "because [she] became angry, behaved erratically, and at least on one visit, was visibly under the influence." According to DCS, Mother "failed to stay in contact with DCS or even her own attorney" and would disappear for "weeks at a time."

¶9 DCS moved to terminate Mother's parental rights in May 2019 on grounds of neglect and chronic substance abuse, and because O.A. had been in out-of-home placement for at least nine months. A.R.S. § 8-533(B)(2), (3), (8)(a). DCS claimed that Mother failed to complete substance abuse services and participate in drug testing, had not consistently attended individual counseling, refused in-patient rehab for substance abuse, had been kicked out of a sober living facility and admitted to a recent methamphetamine relapse.

¶10 Before the severance hearing, Mother moved the juvenile court to dismiss her case for lack of due process based on the period during which Mother was not represented by counsel. The court denied the motion, reasoning that Mother was not "adversely impacted" by the "approximately 90 days where [she] did not have counsel."

¶11 The court held a contested one-day severance hearing. Mother was present, represented by counsel and testified on her own

behalf. Mother admitted to continued substance abuse during the dependency proceeding. The court also heard testimony from the DCS case manager. The court later terminated Mother's parental rights to O.A. on all three grounds alleged. Mother timely appealed and we have jurisdiction. A.R.S. § 8-235(A).

**DISCUSSION**

**¶12** Mother contends the juvenile court "violated her right to due process by failing to ensure her representation of counsel during the course of the dependency action."

**¶13** At the outset, we disagree with DCS that Mother waived this argument or that she must prove fundamental error. Mother's counsel generally raised the argument before the termination hearing and the court rejected it because Mother was not "adversely impacted" by the 90-day period in which she was unrepresented. We review constitutional issues de novo. *Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 442, ¶ 15 (2018).

**¶14** The state must afford counsel to indigent parents who face termination of their parental rights under statute, A.R.S. § 8-221(B), and the Due Process Clause of the United States Constitution, *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 307, ¶ 28 (App. 2007). *See also* Ariz. R.P. Juv. Ct. 38(B). The juvenile court's "failure to allow [parent's] counsel to effectively participate in severance proceedings is reversible error." *Daniel Y. v. Ariz. Dep't of Econ. Sec.*, 206 Ariz. 257, 260, ¶ 12 (App. 2003). And a termination order is void if "predicated on a hearing in which a parent is denied the opportunity to be heard by counsel." *Ariz. State Dep't of Pub. Welfare v. Barlow*, 80 Ariz. 249, 253 (1956).

**¶15** We find no error. All parties concede that Mother was indigent and thus entitled to court-appointed counsel. *See Tammy M. v. Dep't of Child Safety*, 242 Ariz. 457, 461, ¶ 14 (App. 2017). And, according to the juvenile court, Mother was unrepresented by counsel for roughly 90 days from September 2018 to December 2018. But the juvenile court sought to protect rather than negate Mother's right to counsel during the interim period—twice continuing the dependency review *because* Mother was unrepresented. The court did not conduct "a critical stage of the proceedings" during this period or terminate Mother's parental rights. *See Pima Cty Juv. Action No. J-64016*, 127 Ariz. 296, 298 (App. 1980) (holding that parent was denied due process because she was denied counsel at "a critical stage of the proceedings"). Nor did the court hold a severance adjudication hearing or consider "essentially the same evidence . . . as at a typical

severance adjudication hearing." *Christy A.*, 217 Ariz. at 307, ¶ 28. Also noteworthy is Mother's silence on the ASFA findings; her counsel never objected to them or asked the court to revisit them for any reason.

**¶16** Mother counters that the juvenile court granted DCS's "request for ASFA [findings] during the [period]," but the ASFA finding was not a "critical stage" of the severance proceeding at which Mother's parental rights were determined. Instead, as explained in Mother's brief, "[t]he [juvenile] court's order granting a finding of ASFA . . . allows [DCS] to receive federal financial participation for foster care maintenance payments." The court did not compromise Mother's ability to effectively defend the case; it only found that DCS made "reasonable efforts to finalize" a permanency plan. And the juvenile court's ultimate termination order was "predicated" on the severance adjudication hearing, during which it fielded all the evidence required to terminate Mother's parental rights on grounds of neglect, substance abuse and time-in-care. *Barlow*, 80 Ariz. at 253. The court never relied on or even cited the ASFA findings in the final termination order.

**¶17** Mother cites our *J-64016* decision to support her argument, but that case only amplifies why Mother's argument fails. There we found a due process violation because, unlike here, the parent had been denied counsel at the "dependency hearing, a critical stage of the proceedings." *J-64016*, 127 Ariz. at 298. Beyond that, and again unlike here, we emphasized the importance of the dependency hearing, which represented the juvenile court's "only basis for certain findings of fact." *Id.*

## CONCLUSION

**¶18** We affirm.

