NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF

PARENTAL RIGHTS AS TO C.G., M.G., and C.G.,

No. 1 CA-JV 23-0224
FILED 05-21-2024

Appeal from the Superior Court in Maricopa County
No. JD41931
The Honorable Suzanne S. Marwil, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant, Mother*

Arizona Attorney General's Office, Tucson
By Jennifer L. Thorson
*Counsel for Appellee, Department of Child Safety*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda L. Adams
*Counsel for Appellees, Children*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Michael J. Brown joined.

---

**C A M P B E L L**, Judge:

¶1 Mother appeals the termination of her parental rights to her three children based on nine months' time-in-care, fifteen months' time-in-care, and chronic substance-abuse grounds, as well as the finding that termination was in the children's best interests. *See* A.R.S. 8-533(B)(8)(a), -533(B)(8)(c), -533(B)(3). For the following reasons, we affirm.

**BACKGROUND**

¶2 Mother has three children: Crystal, born March 2017, Maddie, born July 2018, and Christopher, born May 2022.[1] When Christopher was born substance-exposed, Mother disclosed that she was using drugs to cope with her homelessness during her pregnancy. Mother tested positive for both fentanyl and THC while in the hospital for Christopher's birth.

¶3 The Department of Child Safety (DCS) received a report of Mother's drug use, and a case manager contacted Mother before she was discharged from the hospital. After Mother was discharged, Christopher remained in the hospital to receive medical care. DCS implemented a 14-day present danger plan requiring Mother to participate in substance-abuse testing and to engage the assistance of a responsible adult to ensure the safety of the two older children.[2] Maternal aunt agreed to be the designated responsible adult and provide supervision during this period. Over the 14-day period, Mother did not participate in substance-abuse testing or maintain contact with her DCS case manager. Mother also left the two girls with maternal aunt for consecutive days without any contact.

¶4 DCS scheduled a team decision-making meeting to discuss the parents' homelessness and substance abuse. Mother did not attend the meeting despite efforts by DCS and relatives to ensure her attendance.

---

[1] We use pseudonyms to protect the identities of the children.
[2] The children's fathers are not parties to this appeal.

Based on Mother's lack of engagement, neglect, and substance abuse, DCS filed a dependency petition regarding the two girls. DCS took custody of the girls and officially placed them with maternal aunt.

**¶5**　　　　When Christopher was medically ready for discharge from the hospital, DCS filed a dependency petition because Mother was unable or unwilling to communicate with DCS or prepare a place for him. DCS alleged Christopher was a dependent child based on Mother's substance abuse, an unfit home environment, and her inability to care for him. DCS took custody of Christopher and placed him with his sisters in their maternal aunt's home.

**¶6**　　　　In July 2022, the juvenile court found Christopher dependent regarding Mother after she failed to appear at a properly noticed hearing. In September 2022, the court found the two older children dependent regarding Mother after she again failed to appear at a properly noticed hearing. The court approved a case plan of family reunification for all three children.

**¶7**　　　　DCS offered Mother various services including substance-abuse testing, assessment, and treatment; the Nurturing Parenting Program; supervised visitation; and transportation assistance. Yet, by October 2022, Mother had not participated in any of the offered services.

**¶8**　　　　Mother contacted DCS once in October 2022 to ask about urinalysis testing but never followed up. Her next contact was in January 2023, when she emailed DCS asking to schedule an appointment. When DCS replied and attempted to arrange for services, Mother did not respond. Mother had no further contact with DCS until she appeared at an April 2023 report and review hearing. At the hearing, she agreed to meet with her case manager later that afternoon, but again, she did not show up.

**¶9**　　　　In August 2023, DCS received a report that Mother had been hospitalized. Based on this information, the DCS case manager called the hospital to speak with Mother. The case manager notified Mother of an upcoming report and review hearing, at which Mother failed to appear. At that hearing, the court granted DCS's motion to change the case plan to severance and adoption.

**¶10**　　　　In September 2023, DCS moved to terminate Mother's parental rights to all three children based on chronic substance abuse, nine months' time-in-care, and fifteen months' time-in-care. Though the court found that service through Mother's counsel "would be appropriate," it

requested DCS to "attempt any other available means of contacting mother, including text message" and publication. After a diligent search, DCS could not locate Mother.

**¶11**     At a November initial severance hearing, the court found Mother had been served both through counsel and by publication. Based on Mother's failure to appear, the court found she waived her right to contest the termination of her parental rights. Neither party objected to an accelerated termination adjudication. So, the court proceeded.

**¶12**     DCS called the case manager, who testified about the extensive number and variety of services offered to Mother and her failure to engage. He noted that Mother had "not had consistent contact with her children in over a year." The children's maternal aunt was providing for the children's needs and had fostered a "strong bond" with them. He confirmed that maternal aunt was willing to adopt and was the prospective adoptive placement for the children.

**¶13**     The court found that DCS proved, by clear and convincing evidence, each of the alleged termination grounds and found termination to be in the children's best interests by a preponderance of the evidence. The court issued its termination order. Mother timely appealed.

## DISCUSSION

**¶14**     A parent's right to custody and control of his or her own child, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000). The juvenile court may terminate the parental relationship where (1) clear and convincing evidence shows the existence of a statutory ground for termination under A.R.S. § 8-533, and (2) a preponderance of the evidence shows that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 281–82, 288, ¶¶ 7, 41 (2005).

**¶15**     We accept the juvenile court's factual findings so long as they are supported by reasonable evidence and inferences, and we affirm the court's legal conclusions unless they are clearly erroneous. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 278–79, ¶¶ 30–31 (2023). We do not reweigh the evidence. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). Here, Mother does not contest the statutory grounds for termination, nor does she argue that termination was not in the children's best interests. Instead, she raises two procedural challenges that we address in turn.

## I.      Waiver

**¶16**          Mother argues the court erred by not expressly finding her waiver of her right to be present at the adjudication to be knowing, intelligent, and voluntary. In a termination case, a parent is entitled to notice of the location, date, and time of the initial termination hearing. Ariz. R.P. Juv. Ct. 351(c)(1). In the notice, the parent must be warned of the consequences of failing to appear at the initial hearing, pretrial conference, status conference, or termination adjudication hearing without good cause. *Id.* Specifically, the parent must be cautioned that failure to appear could result in a finding of the waiver of legal rights, admission of allegations set forth in the motion for termination, and the chance "that the hearing may go forward in the absence of the parent and may result in the termination of parental rights based upon the record and evidence presented." Ariz. R.P. Juv. Ct. 351(c)(2).

**¶17**          To the degree Mother is arguing improper notice or service, the record demonstrates that she had ample notice of the consequences of her failure to appear. Over the course of the proceedings, Mother was admonished by the court about the consequences of her failure to appear at any hearing. Mother does not contest that she was twice provided a written copy of those consequences (Form 1), and both times she avowed that she understood the information. Moreover, she already experienced the consequences of waiver by failing to appear—because she failed to appear at the children's dependency hearings, the court found the children to be dependent in her absence.

**¶18**          Mother points to the court's failure to provide her with or verbally admonish her of the contents of Form 4 as further evidence that her waiver was involuntary. In substance, Form 1 and Form 4 provide the same notice about attendance requirements and waiver implications; the difference lies only in the cause for the notice. Form 1 is provided to parents upon the filing of a dependency action and includes information about what is expected of the parent regarding reunification and participation in the dependency process. Form 4 is provided upon the filing of a motion to terminate parental rights and contains the same language about failure to appear and its consequences, including waiver of the ability to contest the allegations and an acceleration of the adjudication. Notably, both forms explicitly warn that failure to attend any hearing allows the court to "consider evidence in your absence" and "terminate your parental rights." Mother received this information at least twice in the dependency proceedings and acknowledged she understood the consequences of failing to appear. For the court to provide Mother a Form 4 and verbal

admonishment of the consequences of failing to appear, Mother would have had to attend a hearing after DCS moved to terminate and provide the court that opportunity. She failed to appear.

**¶19** Mother argues the juvenile court erred by failing to expressly find her failure to appear amounted to a "voluntary" waiver of her right to contest the termination. But that is not a requirement in a termination proceeding. A parent's failure to appear at a dependency hearing is a de facto finding of waiver; the court need not engage in a voluntariness inquiry. *See* Ariz. R.P. Juv. Ct. 351(c)(2) (failure to appear without good cause may result in a *finding* of waiver). Should a parent fail to appear, the court may accelerate the adjudication and take evidence. Ariz. R.P. Juv. Ct. 352(f). DCS is still required to prove its case for termination by presenting sufficient evidence. *Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 446, ¶ 32 (2018). Once the statutory grounds and best interests of the child are adequately proven by the proper evidentiary standards, the court may both accelerate the termination adjudication and terminate the absent parent's rights. Ariz. R.P. Juv. Ct. 351(c)(2), 352(f); *Trisha A. v. Dep't of Child Safety*, 247 Ariz. 84, 87–88, ¶ 14 (2019). The court did not err in doing so here.

## II.    Acceleration

**¶20** Mother contends the court abused its discretion by holding an accelerated in-absentia termination adjudication. A juvenile court has discretion to accelerate a termination adjudication if a parent fails to appear without good cause and was properly served notice. Ariz. R.P. Juv. Ct. 352(f); *Trisha A.*, 247 Ariz. at 87–88, ¶ 14. An accelerated termination order may be set aside only if the parent demonstrates good cause for failure to appear and asserts a meritorious defense. *Trisha A.*, 247 Ariz. at 89, ¶ 22. A meritorious defense is a "good faith basis upon which to contend that the petitioner cannot prove a statutory basis for termination and/or that termination is not in the best interests of the child." *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 304, ¶ 15 n.11 (App. 2007). Mother does not claim good cause for her absence at the accelerated termination adjudication, nor does she assert a meritorious defense. As such, she is precluded from challenging the accelerated adjudication on those grounds on appeal. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 16 (App. 2014).

**¶21** The court has discretion to accelerate a termination adjudication. Ariz. R.P. Juv. Ct. 352(f). Our Supreme Court explained in *Trisha A.*, "[w]hen exercising this discretion, courts should consider a parent's willingness to participate in the case, including availing themselves of services intended to remedy the issues leading to

dependency, and the stage of the process." 247 Ariz. at 87–88, ¶ 14. Before the court accelerated the adjudication, it had over two years of information demonstrating Mother's unwillingness to participate in substance-abuse treatment or parenting services. Moreover, she continuously failed to communicate with DCS, her attorney, and the court, or to appear in court as ordered. The court was privy to and properly considered all this information prior to reaching the decision to accelerate the termination adjudication. That being so, we find no error in the court's decision.

**CONCLUSION**

¶22      Because Mother has shown no error in the juvenile court's accelerated termination adjudication, we affirm the termination of Mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:   TM