NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

LILIAN G., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, V.P., A.P., L.P., *Appellees*.

No. 1 CA-JV 16-0322
FILED 1-26-2017

Appeal from the Superior Court in Yuma County
Nos. S1400JD20150349, S1400JD20150350, S1400JD20150351
The Honorable Kathryn Stocking-Tate, Judge

**AFFIRMED**

COUNSEL

Office of the Legal Defender, Yuma
By William P. Katz
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

---

**W I N T H R O P**, Judge:

¶1             Lilian G. ("Mother") appeals the juvenile court's order terminating her parental rights to V.P., A.P., and L.P. ("the children").[1] Mother challenges several findings of the juvenile court, including the court's finding that severance was in the children's best interests.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[2]

¶2             Mother is the biological mother of the children, who were born from 2004 to 2009.  Mother has a decade-long history of substance abuse—most specifically, methamphetamine—that has persistently and negatively affected her ability to parent the children.

¶3             In October 2014, Mother and her "significant other" were involved in a "verbal altercation" that escalated into them throwing things at one another.  Police officers were called to the home for a domestic disturbance, and the officers observed the significant other hitting five-year-old L.P.  The significant other was extremely intoxicated and arrested for disorderly conduct, but neither Mother nor the children would cooperate with the officers.  The officers also noticed that clothing, trash, dirt, and animal feces covered the floor.

¶4             In March 2015, the Department of Child Safety ("DCS") received a report that Mother was taking the children from hotel room to hotel room while she met with strange men, smoked crystal

---

[1]     The juvenile court also terminated the parental rights of the children's father ("Father").  Father is not a party to this appeal.

[2]     We view the facts and reasonable inferences therefrom in the light most favorable to affirming the juvenile court's order.  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010).

methamphetamine with these men in the children's presence, left the children with these men, and kept illegal drugs and drug paraphernalia within the children's reach. Meanwhile, she ignored A.P.'s physical and mental health issues.[3] DCS requested that Mother submit to drug testing.

¶5        Approximately three weeks later, DCS noted Mother had initially "cleaned up her act," but she then resumed "using drugs and running around" as soon as she no longer had to undergo drug testing. She would leave the children alone in the home "for hours," would not bathe them regularly, provided them with only dirty clothes to wear, and ignored their long-term, severe lice infestations and hygiene problems. She also ignored calls from the children's school about the lice, hygiene, and other problems, leading to the children's eventual suspension from school due to the lice issue. While at school, the children acted depressed and anxious and had behavioral issues, ostensibly as a result of their having witnessed domestic violence in their parents' places of residence.

¶6        Mother, who was unemployed, had no stable living environment and moved regularly between hotels and family members' homes. Mother requested help from DCS to help her parent and discipline the children, and although DCS offered in-home services to address the children's mental health, hygiene, and discipline issues, Mother did not comply with the services and could not be reached by the service providers or DCS.

¶7        In June 2015, Mother admitted to DCS that she was using methamphetamine at least weekly, although she denied using drugs in the home or around the children. She also admitted moving from motel to motel, ignoring the children's mental health and behavioral issues—including that A.P. would "go[] to the bathroom on herself every couple of days for the past year"—and ignoring the children's year-plus lice infestations.

¶8        DCS removed the children from Mother's care, initially placed each of them with a different maternal relative,[4] and petitioned to have the children adjudicated dependent based on Mother's neglect and substance abuse. Mother agreed to services—including substance abuse assessment and treatment, parenting classes, parent-aide services, drug

---

[3]       A.P. had expressed that she wanted to kill Mother, her siblings, and herself.

[4]       The children were later placed with the paternal grandparents.

testing through TASC, domestic violence counseling, a psychological evaluation, transportation, and supervised visitation—and pled no contest to the allegations of the dependency petition.

**¶9**      After an initial dependency hearing, the juvenile court found the children dependent as to Mother and approved a case plan of family reunification.  As part of the reunification plan, DCS required that Mother resolve her substance abuse, domestic violence, behavioral health, parenting, housing, and financial issues; become willing and able to meet the children's needs; and keep DCS informed of her moves.

**¶10**      Mother, however, failed to obtain employment, find a stable residence of her own, or fully participate in services—including the psychological evaluation, parent-aide services, and visitation—and was eventually closed out of services due to lack of participation.  During the dependency, Mother never earned unsupervised contact with the children.

**¶11**      Mother also continued to use illegal drugs.  In July 2015, her hair-follicle test returned positive for amphetamines and methamphetamine.  A month later, she appeared for her substance abuse assessment, but did not engage in the substance abuse treatment program offered through TERROS.  DCS enrolled her in Catholic Community Services' substance abuse treatment program, but she did not attend and was closed out of the program.

**¶12**      In January 2016, Mother referred herself for a third treatment program and appeared for her intake session, but did not follow through with the recommended services.  In March 2016, DCS referred Mother to Catholic Community Services a second time, but after completing a new assessment, she again did not engage in treatment and twice tested positive for amphetamines and methamphetamine—in March and April 2016.  At an April 2016 report and review hearing, the court instructed her to participate in the Crossroads Mission's ten-day detoxification program, but she did not attend.[5]  In May 2016, however, Mother admitted herself into Community Bridges' thirty-day, inpatient treatment program, completed the program, and agreed to move to the TLC Center's aftercare group home

---

[5]      The court also approved a case plan of family reunification concurrent with severance and adoption at the April 2016 hearing.

in June 2016.  Soon after, however, she left the TLC Center and moved in with her mother, with whom she had a contentious relationship.[6]

**¶13**        On June 21, 2016, DCS moved to terminate Mother's parental rights to the children on neglect, chronic substance abuse, and nine-month out-of-home placement grounds.  *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(2), (3), (8)(a) (Supp. 2016).[7]  By this time, the children had been in DCS's care for approximately twelve months.

**¶14**        On July 13, 2016, the juvenile court held a hearing on the motion for termination.  Although Mother was served with the motion for termination, she was absent,[8] and the juvenile court found she had failed to attend the hearing without good cause.[9]  The court found that she waived her trial rights and admitted the motion's allegations; it then held the termination adjudication hearing in her absence.[10]

---

[6]      None of Mother's subsequent drug tests were submitted to DCS.

[7]      We cite the current version of the statute because no changes material to our analysis have occurred since the date of severance.

[8]      A parent in termination proceedings has a duty to appear at related hearings, and a failure to appear may constitute a waiver of the right to challenge the allegations in the severance motion or petition.  *See* Ariz. R.P. Juv. Ct. 64(C), 66(D)(2).  Mother had been previously advised that she was required to appear at all termination hearings and her failure to appear without good cause could result in a finding that she had waived her legal rights and admitted the allegations in the motion.

[9]      Waiver in the severance context may be properly set aside with a showing of "good cause."  *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 304, ¶ 16, 173 P.3d 463, 468 (App. 2007).  To establish good cause, a "party must show that (1) mistake, inadvertence, surprise or excusable neglect exists and (2) a meritorious defense to the claim exists."  *Id.*

[10]     The waiver of trial rights by a failure to appear generally precludes a parent from affirmatively presenting testimony or other documentary evidence to contest the statutory bases for termination, but does not preclude the parent's counsel from cross-examining witnesses or, in certain instances, the parent from testifying as to the issue of the best interests of the children.  *See Christy A.*, 217 Ariz. at 306-07, ¶¶ 24-25, 173 P.3d at 470-71.

**¶15** At the conclusion of the hearing, the court terminated Mother's parental rights after finding DCS had proved each of the statutory grounds alleged for severance, DCS had made diligent efforts to provide reunification services for Mother, and termination was in the children's best interests. On August 5, 2016, the court entered a written order terminating Mother's relationship with the children.

**¶16** Mother filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. § 8-235(A) (2014) and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

**ANALYSIS**

*I.    Standard of Review*

**¶17** "Parents possess a fundamental liberty interest in the care, custody, and management of their children." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24, 110 P.3d 1013, 1018 (2005) (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶ 11, 995 P.2d 682, 684 (2000)). Even fundamental rights are not absolute, however. *Id.* (citing *Michael J.*, 196 Ariz. at 248, ¶ 12, 995 P.2d at 684). A court may sever those rights if it finds clear and convincing evidence of one of the statutory grounds for severance, and finds by a preponderance of the evidence that severance is in the children's best interests. *See* A.R.S. §§ 8-533(B), -537(B) (2014); *Kent K.*, 210 Ariz. at 281–82, 288, ¶¶ 7, 41, 110 P.3d at 1015–16, 1022.

**¶18** The juvenile court retains great discretion in weighing and balancing the interests of the child, parent, and state. *Cochise Cty. Juv. Action No. 5666-J*, 133 Ariz. 157, 160, 650 P.2d 459, 462 (1982). As the trier of fact in a termination proceeding, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18, 219 P.3d 296, 303 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4, 100 P.3d 943, 945 (App. 2004)). Thus, the resolution of conflicts in the evidence is uniquely the province of the juvenile court, and we will not reweigh the evidence in our review. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12, 53 P.3d 203, 207 (App. 2002); *see also Pima Cty. Adoption of B-6355*, 118 Ariz. 111, 115, 575 P.2d 310, 314 (1978) ("In considering the evidence it is well settled that an appellate court will not substitute its own opinion for that of the trial court." (citation omitted)). We will not disturb the juvenile court's order unless no

reasonable evidence supports its factual findings. *Matthew L.*, 223 Ariz. at 549, ¶ 7, 225 P.3d at 606.

¶19 "If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds." *Jesus M.*, 203 Ariz. at 280, ¶ 3, 53 P.3d at 205 (citations omitted); *see also* A.R.S. § 8-533(B) (requiring that evidence sufficient to justify the termination of the parent-child relationship include "any one" of the enumerated termination grounds).

*II.    Mother's Challenge to the Court's Findings and Statements*

¶20 In this case, reasonable evidence supports the juvenile court's factual findings, and the court's severance order is supported by clear and convincing evidence under each of the three statutory grounds asserted by DCS—neglect under A.R.S. § 8-533(B)(2), chronic substance abuse under A.R.S. § 8-533(B)(3), and nine months' out-of-home placement under A.R.S. § 8-533(B)(8)(a). Although Mother argues the juvenile court should have weighed the evidence of her completion of Community Bridges' thirty-day, inpatient treatment program approximately one month before the termination adjudication hearing more heavily in her favor, we find no error in the weight that the court gave to Mother's late attempt at sobriety, especially given Mother's refusal to follow up her treatment in the TLC Center's aftercare group home and her subsequent refusal to stay in contact with her caseworker. *See, e.g., Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 29, 231 P.3d 377, 383 (App. 2010) (recognizing that a parent's "temporary abstinence from drugs and alcohol does not outweigh [her] significant history of abuse or [her] consistent inability to abstain during [the] case"). Further, despite Mother's suggestion to the contrary, we will not reweigh the evidence. *See Jesus M.*, 203 Ariz. at 282, ¶ 12, 53 P.3d at 207; *Pima Cty. Adoption of B-6355*, 118 Ariz. at 115, 575 P.2d at 314.

¶21 Mother also argues that two statements by the juvenile court should result in "reversible error." In the first statement, the court said, "All right. Well, I will find that the action or inaction by the parents, and *probably the most telling is their failure to appear today, especially mom, knowing what's at stake. She knew what was at stake. She was at the [June 13, 2016 permanency planning] hearing.*" (Emphasis added.) Mother argues that, in making this statement, the court violated her due process rights because it improperly considered "information which is not substantive evidence," and she analogizes her situation to that found in a criminal trial, in which the jury is instructed to not consider a defendant's absence at trial as

evidence of guilt. In the second statement, the court said, "So it's my understanding that [Mother] left the TLC group home apparently to go live with her mom. I guess that's kind of what we've pieced together here today, but at the end of the day, she hasn't maintained contact with the caseworker. She hasn't maintained contact with her attorney. *The truth is, we don't know if she's sober or not.*" (Emphasis added.) Mother argues that the second statement was not fully supported by the record and "appears to have shifted the burden" to her.

**¶22** Mother did not object to either statement or ask for clarification, however, and has therefore waived her arguments on appeal. *See Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13, 13 P.3d 763, 768 (App. 2000) (recognizing that "we generally do not consider issues, even constitutional issues, raised for the first time on appeal" (citation omitted)). We are aware that the doctrine of fundamental error, typically reserved for criminal matters, has been applied in severance cases. *See, e.g., Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, 94, ¶ 23, 118 P.3d 37, 42 (App. 2005); *see also State v. Henderson*, 210 Ariz. 561, 567-68, ¶¶ 19–26, 115 P.3d 601, 607–08 (2005) (holding that a defendant forfeits review of all but fundamental, prejudicial error by failing to object at trial). Even assuming fundamental error review is appropriate in this context, however, Mother has nonetheless waived her claim on appeal because she does not acknowledge she failed to raise the arguments below and does not assert we should apply fundamental error review, much less attempt to show any error was fundamental and caused her prejudice. *See State v. Moreno–Medrano*, 218 Ariz. 349, 354, ¶ 17, 185 P.3d 135, 140 (App. 2008) (holding that the failure to allege fundamental error waives the argument on appeal).[11]

### III. Best Interests

**¶23** Mother also argues the court erred in finding severance was in the children's best interests. She contends severance was "premature" given her belated efforts at sobriety, and she asks, in effect, that we reweigh the evidence presented to the juvenile court. Again, we decline to do so.

**¶24** To prove severance is in a child's best interest, DCS must show that severance either provides an affirmative benefit or eliminates potential harm to the child if the relationship between the parent and the child is allowed to continue. *Maricopa Cty. Juv. Action No. JS–500274*, 167

---

[11] Waiver aside, the court's statements, read in context, were supported by the record, were not error, and on this record could not have prejudiced Mother.

Ariz. 1, 6–7, 804 P.2d 730, 735–36 (1990); *Oscar O.*, 209 Ariz. at 334, ¶ 6, 100 P.3d at 945. The best interest requirement may be met if a current adoptive plan exists for the child or even if DCS can show that the child is adoptable. *JS–500274*, 167 Ariz. at 6, 804 P.2d at 735; *Maricopa Cty. Juv. Action No. JS–501904*, 180 Ariz. 348, 352, 884 P.2d 234, 238 (App. 1994). The juvenile court may also consider evidence that an existing placement is meeting the needs of the child in determining that severance is in a child's best interest. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5, 982 P.2d 1290, 1291 (App. 1998). Additionally, the court may take into account that, in most cases, "the presence of a statutory ground [for severance] will have a negative effect on the children." *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 23, 312 P.3d 861, 866 (App. 2013) (quoting *Maricopa Cty. Juv. Action No. JS–6831*, 155 Ariz. 556, 559, 748 P.2d 785, 788 (App. 1988)).

¶25 The record supports the juvenile court's express finding that severance was in the best interests of the children. First, severing Mother's parental rights would affirmatively benefit the children. The record indicates that, soon after DCS assumed the children's care, it placed them with their paternal grandparents, who helped to rid the children of lice; met their basic needs, including medical and dental care; provided a safe and stable environment; and addressed the children's educational and behavioral concerns. At the termination adjudication hearing, Mother's DCS case manager testified that the children's needs were being met and the children had thrived in their paternal grandparents' care:

> Since the children came into care, they've made a complete turnaround. They went from missing school for long periods of time to failing and almost being held back at the same grade level to now doing very well in school, getting perfect attendances. V[.P.], who was going to be held back, graduated and was promoted and will be going to the seventh grade. They're . . . full of structure and routine right now and they are doing very well.

The case manager further testified that termination served the children's best interests because they were adoptable and their paternal grandparents were willing to adopt them.

¶26 Second, the record and the DCS case manager's testimony indicate that leaving Mother's parental rights intact would be detrimental to the children. The case manager testified that Mother had substantially neglected to remedy the circumstances that had brought the children into out-of-home care. She also stated that Mother's drug abuse had rendered

Mother unable to care for or supervise the children, and opined that reasonable grounds existed to believe Mother's drug abuse would persist for a lengthy time, because "[M]other has a long history of substance abuse and till this day, she hasn't demonstrated a long period of sobriety in order to parent her children." Thus, the reasonable evidence supporting the statutory grounds for severance also supports a finding that preserving Mother's parental rights would harm the children. The record demonstrates both the affirmative benefits to the children from severance and the elimination of potential harm or detriments that would exist if the parent-child relationships were not severed. *See JS–500274*, 167 Ariz. at 6, 804 P.2d at 735.

## CONCLUSION

¶27 The juvenile court's order terminating Mother's parental rights to the children is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA