NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MICHAEL T., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.E., *Appellees*.

No. 1 CA-JV 16-0381
FILED 6-22-2017

Appeal from the Superior Court in Maricopa County
No. JD529119
The Honorable Timothy J. Ryan, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Peter B. Swann joined.

---

**C R U Z**, Judge:

¶1 Michael T. ("Father") appeals the superior court's order severing his parental rights to J.E. Father contends the superior court erred in terminating his parental rights to J.E. due to Father's failure to appear at the severance hearing. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2 J.E. was born to Father and Echo E. ("Mother") on August 1, 2015, weighing three pounds and testing positive for amphetamine, a tricyclic antidepressant, and tetrahydrocannabinol. At the time of J.E.'s birth, Father resided in New Hampshire, where he and Mother lived before Mother relocated to Arizona to escape a domestically violent relationship with Father. On August 18, 2015, the Arizona Department of Child Safety ("DCS") filed a dependency petition against Mother.[1] In its dependency petition DCS alleged, and the superior court found, that J.E. was dependent as to Mother because of mental-health issues, domestic violence, neglect, and substance abuse.[2] J.E. was placed in a licensed foster home and currently receives services from both the Arizona Early Intervention Program and the Division of Developmental Disabilities.

¶3 Upon learning Father's identity, DCS amended the dependency petition and alleged that J.E. was also dependent as to Father because Father neglected him and failed to provide J.E. with the basic necessities of life. The petition was served on Father in New Hampshire using certified mail. The dependency petition advised Father that "[f]ailure to appear without good cause *may* result in a finding that the parent . . . has waived his/her legal rights and admitted the allegations in the dependency

---

[1] At the time, Father's identity was unknown to DCS. Paternity testing was completed in December 2015, and the court found Father's paternity as to J.E. on March 24, 2016.

[2] Mother is not a party to this appeal.

petition," and that "hearings *may* go forward in his/her absence and *may* result in an adjudication of dependency, permanent guardianship or termination of parental rights based upon the record and evidence presented . . . ."  (Emphasis added.)

**¶4**        Father denied the allegations.  During the course of the proceedings, the court rescheduled two mediations because the DCS representative was not present.  At the March 8, 2016 hearing, which Father attended telephonically, the court scheduled the matter for pretrial conference on April 15, 2016.

**¶5**        Father failed to appear at the April 15, 2016 pretrial conference, and the superior court proceeded in his absence, adjudicating J.E. dependent as to Father.  The March 8 hearing was the last hearing Father attended.  In its minute entry, the court warned Father that he could "expect a change of case plan to severance and adoption if things [did] not improve."  Father's case plan required him to achieve stable income and housing, demonstrate sustained sobriety, and complete parenting classes.

**¶6**        After Father's paternity was established, DCS submitted documentation under the Interstate Compact on the Placement of Children ("ICPC") for J.E. to be placed with Father.  However, Father refused to cooperate with ICPC, and the ICPC process was never completed.  Similarly, Father failed to submit to urinalysis tests and maintain consistent contact with DCS.  Additionally, Father's parents stated he was still using drugs and they felt J.E. would not be safe in their home.

**¶7**        Father failed to appear telephonically at the July 2016 report and review hearing.  Given Father's noncompliance, in July 2016, the superior court changed the case plan to severance and adoption.  DCS moved to terminate Father's parental rights based on J.E.'s nine-month out-of-home placement, DCS's diligent efforts to provide appropriate reunification services, and Father's substantial neglect or willful refusal to remedy the circumstances that caused J.E. to be in out-of-home placement. Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(8)(a) (Supp. 2016).[3]  DCS further alleged that termination of Father's rights was in J.E.'s best interest.  A.R.S. § 8-533(B).

**¶8**        Father failed to appear at the hearing on the motion for termination of parent-child relationship held August 17, 2016.  Father's

---

[3]        We cite the current version of statutes unless revisions material to this decision have since occurred.

counsel avowed that service of DCS's motion to terminate Father's parental rights was complete and that Father was sent a copy of the motion and notice of the hearing date. Despite notices from counsel of all the court hearings and motions in the case, Father failed to maintain required contact with the court or his counsel. The court proceeded with the hearing in Father's absence, and made the following findings under A.R.S. § 8-533(B)(8)(a): J.E. had been in an out-of-home placement for longer than nine months; DCS made diligent efforts to provide appropriate reunification services; and Father substantially neglected to remedy the circumstances that caused J.E. to be in an out-of-home placement. At the end of the hearing, the court found DCS proved by a preponderance of the evidence that it would be in J.E.'s best interest for the termination of the parent-child relationship to occur; termination of the relationship would further the plan of an adoptive placement which meets all J.E.'s needs; J.E. was considered adoptable; and another adoptive placement could be located should the current placement be unable to adopt.

¶9  Father subsequently filed a motion to set aside the superior court's severance order, claiming he failed to appear at the severance hearing on August 17 because he "was in a residential treatment center and had no access to his phone to contact" the court or his attorney. In denying Father's motion, the court found "[F]ather's multiple failures to appear substantially predated his failure to appear" at the August 17 severance hearing, and that "[F]ather had an opportunity prior to his admission into an inpatient facility to communicate with his counsel prior to admission but he chose not to do so."

¶10  Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), 12-2101(A)(1), and Arizona Rules of Procedure for the Juvenile Court ("Rule") 103(A).

## DISCUSSION

¶11  We review the superior court's order severing a parent's rights for an abuse of discretion. *Frank R. v. Mother Goose Adoptions*, 239 Ariz. 184, 190, ¶ 21, 367 P.3d 88, 94 (App. 2016). Similarly, a court's determination of good cause is discretionary, reviewed for abuse of discretion, and generally reversed only if the superior court's decision was "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 101, ¶ 15, 158 P.3d 225, 230 (App. 2007) (internal quotations omitted).

**¶12**        Parents "have a fundamental right to raise their children as they see fit, but that right is not without limitation." *Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 79, ¶ 14, 41 P.3d 614, 617 (App. 2001). A court may sever those rights if it finds by clear and convincing evidence that one of the statutory grounds for severance is met, and finds by a preponderance of the evidence that severance is in the best interests of the children. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005). If a parent does not appear at the initial hearing, the court, after determining that the parent has been served with proper legal notice, may find that the parent has waived their legal rights and is deemed to have admitted the allegations of the petition by their failure to appear. A.R.S. § 8-535(D). The court may proceed with the hearing and may terminate the parent-child relationship as to the parent who failed to appear based on the record and evidence presented as provided by the rules prescribed by the supreme court. *Id.*; Ariz. R.P. Juv. Ct. 66(D)(2).

**¶13**        Father argues the superior court erred in terminating his parental rights due to his failure to appear for his initial hearing, i.e., by "default."

**¶14**        Father does not challenge severance of his parental rights on the merits. Rather, he contends the superior court should not have proceeded at the hearing in his absence, terminating his parental rights, when he was unable to contact his attorney or the court while he resided in a residential treatment program. *See Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 304, ¶ 14, 173 P.3d 463, 468 (App. 2007) ("[T]he juvenile court has engrafted the concept of 'default' . . . into the juvenile court rules or, at least, is utilizing the 'default' terminology when a parent fails to appear."). But the failure to appear does not result in "default" in the true sense: it represents only a "waiver of rights." *Id.* (citing A.R.S. § 8-537(C)); *see also* Ariz. R.P. Juv. Ct. 64(C) (stating that a termination hearing may go forward in the parent's absence, and may result in the termination of parental rights based upon the record and evidence presented.); Ariz. R.P. Juv. Ct. 66(D)(2). In such circumstances, "the better course [is] for the juvenile court to instead consider whether the parent can show 'good cause' as to why they failed to personally appear, and whether, under the circumstances, such failure should constitute a 'waiver of rights.'" *Christy A.*, 217 Ariz. at 304, ¶ 14, 173 P.3d at 468.

**¶15**        In such instance, the trial court may set aside the "entry of default" if there is good cause shown that: (1) mistake, inadvertence, surprise, or excusable neglect exists; and (2) a meritorious defense to the underlying claim exists. *Id.* at ¶ 16. Excusable neglect exists if the neglect

or inadvertence occurs from the "act of a reasonably prudent person in the same circumstances." *Ulibarri v. Gerstenberger*, 178 Ariz. 151, 163, 871 P.2d 698, 710 (App. 1993). "A meritorious defense must be established by facts and cannot be established through conclusions, assumptions or affidavits based on other than personal knowledge." *Richas v. Superior Court*, 133 Ariz. 512, 517, 652 P.2d 1035, 1040 (1982).

¶16  We find no abuse of discretion in the superior court's denial of Father's motion to set aside its order.

¶17  At the oral argument on Father's motion and on appeal, Father asserts he failed to appear at the August 17 hearing because he was in an inpatient facility where he was not allowed his cell phone or other personal items. Due to the removal of Father's personal device and items from his possession, Father had no access to the contact information for the court, his counsel, or his family. Father argues that his admission into an inpatient facility to address his substance abuse issues should constitute good cause as to why he failed to personally or telephonically appear at the severance hearing.

¶18  However, as the superior court found, Father's multiple failures to appear predated his failure to appear at the August 17 hearing. Father missed all the hearings after March 8, 2016, several months before his admission into the inpatient treatment facility. Father was notified and aware of the case and termination proceedings. Father was aware of the consequences resulting from his non-appearance at hearings and his non-participation in proceedings; Father had been provided with hearing notices, which included language paralleling Rule 64(C). Therefore, Father's non-appearance cannot be attributed to mistake, inadvertence, or surprise.

¶19  It cannot be said that excusable neglect exists in these circumstances. Father had the obligation to maintain contact with the superior court and his counsel and could reasonably have contacted the court or his counsel before his admittance into the inpatient facility, or otherwise made or inquired into alternative communicative accommodations. The court found Father's admittance to the treatment facility commendable, and the evidence of his admittance credible. However, no evidence was provided showing that Father took any of the potential steps that a reasonably prudent person would have taken in similar circumstances to ensure their participation in a court proceeding where child dependency was at issue.

¶20      Just as Father has failed to show that mistake, inadvertence, surprise, or excusable neglect exists, he fails to show that a meritorious defense to the underlying claim exists. In fact, Father does not advance any defense to the underlying claims. He does not argue that either element of severance was improperly decided under A.R.S. § 8-533(B): that the statutory grounds for severance were not met, or that severance was not in the best interest of the child.

¶21      As to the statutory ground, the evidence supports the superior court's finding that "[t]he child has been in an out-of-home placement longer than nine months," "[t]he Department made diligent efforts to provide appropriate reunification services," and "[Father] substantially neglected to remedy the circumstances that caused the child to be in an out-of-home placement." The evidence also supports the superior court's finding that severance of parental rights would be in J.E.'s best interest. Specifically, the superior court found, among other facts, it "is in the minor child's best interests" for termination to occur; termination of parental rights would benefit the child because it "would allow the case plan of adoption to go forward, which would provide the child with permanency and stability"; and "[t]he child is currently residing in an adoptive placement which is meeting all of his needs." Father has failed to show a meritorious defense exists. We find that the superior court did not abuse its discretion in determining that Father lacked good cause for his failure to appear at the severance hearing, and the superior court did not abuse its discretion in subsequently severing Father's parental rights.

**CONCLUSION**

¶22      For the foregoing reasons, we affirm the superior court's order severing Father's parental rights to J.E.



AMY M. WOOD • Clerk of the Court
FILED: AA