NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

RODNEY S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.H., *Appellees*.

No. 1 CA-JV 17-0538
FILED 6-7-2018

Appeal from the Superior Court in Maricopa County
No. JD30424
The Honorable Bruce R. Cohen, Judge

**AFFIRMED**

COUNSEL

Law Office of Bernard P. Lopez, Goodyear
By Bernard P. Lopez
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Kent E. Cattani joined.

---

**W I N T H R O P**, Judge:

¶1        Rodney S. ("Father") appeals the juvenile court's order denying his motion to set aside the court's finding that he lacked good cause for failing to appear at his severance hearing.  Additionally, Father appeals the court's termination of his parental rights to M.H. on grounds of ineffective assistance of counsel.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In April 2015, the Department of Child Safety ("DCS") took custody of M.H. and her half-siblings after allegations that Father abused illegal substances and engaged in acts of domestic violence.[1]  DCS placed the children with their maternal great grandmother and initiated a dependency action.  The juvenile court found M.H. dependent as to Father in July, and set a case plan of reunification concurrent with severance and adoption.

¶3        Father began participating in reunification services.   In October 2016, DCS returned M.H. to Father's care after the juvenile court found that there would be no substantial risk of harm to the child.  *See* Ariz. R.P. Juv. Ct. ("Rule") 59(A).  The court did not, however, dismiss the dependency action, and in April 2017, DCS re-removed M.H. from Father due to "ongoing concerns of sexual abuse, domestic violence, and substance use."  Soon after, Father stopped communicating with DCS and struggled to participate successfully in services, resulting in closed referrals.  Father then moved and refused to provide his new address to DCS.

¶4        In June 2017, the juvenile court changed Father's case plan to severance and adoption.  DCS filed its motion for termination of parental

---

[1]        The juvenile court also terminated the parental rights of M.H.'s mother and each biological father to M.H.'s half-siblings.  No other parent or child is a party to this appeal; accordingly, our recitation of the facts and analysis of the issues are limited to Father.

rights on the ground of fifteen months' out-of-home placement under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(c). The court held its initial severance hearing on August 17, 2017, at which Father personally appeared.

¶5            At the August hearing, the juvenile court granted Father's counsel's request to withdraw from the case, and continued Father's initial severance hearing to October 5, 2017. The court appointed new counsel to represent Father. The court issued Father a Form 3, Notice to Parent in Termination Action, which advises parents of the consequences of their failure to appear at all termination hearings without good cause and provides space to list upcoming hearing dates.[2] *See* Ariz. R.P. Juv. Ct. Form 3. Finally, the court ordered DCS to contact Father regarding new referrals for services at the telephone number and email address Father provided in open court.

¶6            Less than a week later, DCS emailed Father regarding services. His case manager also requested that Father provide his current mailing address and employer. Father responded, but did not provide the information.

¶7            Father did not appear at the October 5, 2017 continued initial severance hearing. At that time, Father's attorney advised the juvenile court that the mailing address and telephone number she had for Father were incorrect, and she had no other means of contacting Father. The court found Father failed to appear at the hearing without good cause and had therefore waived his right to contest DCS' allegations against him. *See* Rule 65(C)(6)(c). The court converted the proceeding into a final adjudication hearing, after which it terminated Father's parental rights to M.H. *See id.*

¶8            On October 25, 2017, Father filed a letter with the juvenile court stating he learned through DCS that the court terminated his parental rights, and that he did not appear at the hearing because he had the wrong date. Father subsequently filed a motion to set aside his waiver of rights. In support of his motion, Father argued that the confluence of: (1) his previous attorney's withdrawal, (2) the court's failure to endorse him on its minute entry memorializing the August 2017 hearing, (3) incorrect contact information provided to his new attorney, (4) Father not receiving Form 3

---

[2]        On appeal, Father disputes his receipt of Form 3 as it relates to the form serving as a reminder of pending hearing dates, but does not argue he was unaware of the possible consequences of his failure to appear.

with the new hearing date, with (5) the court setting multiple future hearing dates, all led to his mistake and failure to appear in October and that he had a meritorious defense to DCS' allegations against him. The court denied Father's motion, finding he had not demonstrated mistake, inadvertence, surprise, or excusable neglect, and therefore did not have good cause for his failure to appear.

¶9        We have jurisdiction over Father's timely appeal pursuant to A.R.S. §§ 8-235, 12-120.21(A)(1), and 12-2101(A)(2).

## ANALYSIS

    *I.*    *Father's Motion to Set Aside the Juvenile Court's Termination Order*

¶10        Father first argues that the juvenile court erred in denying his motion to set aside the court's termination order, contending that he had good cause for his failure to appear. Although parents have the fundamental right to the custody and control of their children, that right is not absolute. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). When a parent has failed to appear at an initial severance hearing without good cause, and the court finds the parent had proper notice and was previously admonished as to the consequences of failing to appear, Rule 65 allows a court to find the parent waived his right to contest the allegations on the motion for termination, deem the parent to have admitted the statutory basis for severance, and "proceed with the adjudication of termination based upon the record and evidence presented." Rule 65(C)(6)(c); *see also* A.R.S. § 8-863(C).

¶11        To show good cause to set aside a termination order arising out of a scheduled final adjudication hearing, a parent must show: "(1) mistake, inadvertence, surprise, or excusable neglect exists and (2) a meritorious defense to the claims exists." *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 304, ¶ 16 (App. 2007) (citing *Richas v. Superior Court*, 133 Ariz. 512, 514 (1982)); *see also Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 448, ¶ 41 (2018) (citing *Christy A.*'s discussion to support the proposition that definition of "good cause" in civil defaults relating to finding a waiver of rights is "instructive" in termination context). Conduct is excusable if it "is such as might be the act of a reasonably prudent person in the same circumstances." *Christy A.*, 217 Ariz. at 304, ¶ 16 (quoting *Ulibarri v. Gerstenberger*, 178 Ariz. 151 (App. 1993)).

¶12        We review a finding that a parent lacked good cause for his failure to appear, and the court's decision on a motion to set aside

judgment, for an abuse of discretion. *See Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 101, ¶ 15 (App. 2007); *Christy A.*, 217 Ariz. at 303, ¶ 12 (addressing a motion to set aside). We will reverse a finding that a parent lacked good cause for failing to appear only if "the juvenile court's exercise of . . . discretion was 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Adrian E.*, 215 Ariz. at 101, ¶ 15 (citations omitted).

**¶13** Father correctly notes that he was not endorsed on the minute entry for the August hearing. The court did not sign or file the minute entry, however, until later that month, after the court appointed Father new counsel. The minute entry was thus properly endorsed to Father's newly-appointed attorney. Nevertheless, Father had actual notice of the continued severance hearing, as he was personally present before the court in August, where, as argued by the State, the court stated the October hearing date five times. Father did not dispute the State's representation, and the court agreed it was "consistent with [the court's] common practice which was really stressing the court dates" to avoid confusion.[3]

**¶14** Further, as to Father's incorrect contact information, Father failed to keep his address current with the court.[4] This likely resulted in incorrect information being provided to Father's new attorney, and the attorney's consequent inability to reach Father to keep him informed of the case. Moreover, it was not until after the court terminated his rights to M.H. that Father even attempted to learn the identity of, or initiate contact with, his new attorney. *See Hackin v. First Nat'l Bank of Ariz., Phoenix*, 5 Ariz. App. 379, 385 (1967) ("We recognize that where a client wil[l]fully or negligently fails to keep in touch with an attorney so that the attorney cannot properly inform him as to the pending litigation that he cannot complain because he does not realize the date of the trial.").

**¶15** On this record, we cannot say that the juvenile court abused its discretion. Father's conduct was not that of a reasonably prudent person

---

[3] Father did not provide a transcript of the August hearing, *see* ARCAP 11(c), and we presume that the transcript supports the court's ruling, *State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, 30, ¶ 16 (App. 2003).

[4] The record contains three notices of returned mail addressed to Father.

facing termination of his parental rights, thus we need not determine whether Father has shown a meritorious defense to the underlying claim.[5]

## II.    Ineffective Assistance of Counsel

**¶16**        Father next argues for the first time on appeal that the court erred in terminating his parental rights because he was not "effectively represented by appointed counsel" as approximately three months passed before Father met with his newly-appointed attorney.  Arizona courts have not explicitly decided whether a claim of ineffective assistance of counsel may justify relief from a final termination order.  *See John M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 320, 322-23, ¶¶ 8-12 (App. 2007).  Assuming, as we did in *John M.*, that Arizona recognizes such a claim, Father must show both that his "counsel's representation fell below prevailing professional norms and that a reasonable probability exists that, but for counsel's error, the result of the proceeding would have been different."  *Id.* at 322-323, ¶ 8.

**¶17**        The juvenile court appointed Father's new counsel within days of allowing Father's previous counsel to withdraw.  Father's new attorney, however, had no contact with Father prior to the October 5, 2017 continued severance hearing and up until the filing of Father's motion to set aside.  Father asserts that during this time he was "effectively unrepresented," which "constituted ineffective assistance of counsel."  Yet, Father admits this "gap [in communication] was due to incorrect contact information."

**¶18**        Father's new attorney avowed to the court that she: mailed a letter to the address she was given, which was returned as undeliverable

---

5        Father also argues that there is a presumption in favor of hearing a case on the merits.  We agree.  In this case though, the juvenile court did not terminate Father's parental rights to M.H. simply because Father failed to appear at the severance hearing.  Rather, the court conducted an evidentiary hearing, and found clear and convincing evidence to support the statutory ground for severance and that, by a preponderance of the evidence, termination was in M.H.'s best interests.  *See Kent K. v. Bobby M.*, 210 Ariz. 279, 281-82, 284, ¶¶ 7, 22 (2005) (requiring clear and convincing evidence of at least one statutory ground under A.R.S. § 8-533 to justify termination and a finding by a preponderance of the evidence that termination is in a child's best interests); A.R.S. § 8-533(B)(8)(c) (providing statutory basis for severance based on fifteen months' time-in-care).

with no forwarding address; called Father at the phone number she was provided, but could not reach him; conferred with Father's previous attorney, who did not have different contact information; and reached out to Father's DCS case worker, who also did not have Father's current address. Father has not demonstrated that it was his attorney's conduct, as opposed to his own failure to update his contact information, that resulted in him being "effectively unrepresented." Nor has Father shown that his attorney's actions fell below the prevailing professional norms.

**CONCLUSION**

¶19 For the foregoing reasons, we affirm the juvenile court's denial of Father's motion to set aside and order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA